THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN MARK HAZELWONDER, Defendant-Appellant.
Fourth District   No. 4—85—0277

Opinion filed November 13, 1985.—Rehearing denied December 18, 1985.

214

Daniel D. Yuhas and Jonathan Haile, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert J. Biderman and

David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On September 5, 1984, defendant, John Mark Hazelwonder, was convicted in the circuit court of Champaign County of the misdemeanor offense of violation of an order of protection for his former wife, Ruth Godar, issued under the Illinois Domestic Violence Act (IDVA) (Ill. Rev. Stat. 1983, ch. 40, par. 2302—12(a)). He was subsequently placed on probation for six months. On January 29, 1985, a petition was filed in that court charging him with violation of that probation by commission of criminal damage to the property of relatives of his former wife. On March 25, 1985, the court found that defendant had committed the violation and revoked the probation. On April 11, 1985, the court sentenced defendant to another term of probation for 12 months conditioned upon various conditions, including 90 days' imprisonment. As a further condition of probation, the court subjected defendant to the terms of another protective order.

The new order of protection restrained defendant from "striking, threatening, harassing, or interfering with the personal liberty" of his former wife or any family member, removing their two-year-old child from the jurisdiction, or concealing the child. The order also prohibited defendant from having any visitation with their minor child "without order of [that] court." Defendant has appealed the sentence, contending that the portion of the order of protection prohibiting his visitation with his daughter was erroneous. He maintains that (1) he was denied notice of hearing as to the prohibitive order, (2) the court proceeded without evidence or argument, (3) the evidence before the court was insufficient to support a finding that he endangered the child, and (4) the condition of probation arising from the protective order prohibiting his visitation with his child was unrelated to the underlying offense and to his rehabilitation. We affirm.

The Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—6—3(b)(12)) permits the court, as a condition of probation, to require a defendant to abide by the terms of an order of protection entered under IDVA. Section 208(c)(3) of that Act (Ill. Rev. Stat. 1983, ch. 40, par. 2302—8(c)(3)) authorizes the court to establish visitation rights to a minor child as a part of a protective order if, as here, the child is within the jurisdiction of the court under the provisions of section 4 of the Illinois Uniform Child Custody Jurisdiction Act (Ill. Rev.

Stat. 1983, ch. 40, par. 2104). However, section 208(c)(3) of IDVA requires that a restriction on visitation can be made only in accordance with the requirements of Part VI of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (Ill. Rev. Stat. 1983, ch. 40, par. 601 *et seq.*). Section 607 of IMDMA provides that in order to deny a parent's rights of visitation, the court must hold a hearing and determine that the "visitation would endanger seriously the child's physical, mental, moral or emotional health."

■ We do not interpret the interaction of section 208(c)(3) of IDVA and section 607 of IMDMA with the Unified Code of Corrections to require that a sentencing court hold a hearing separate from a sentencing hearing before requiring a convicted defendant, as a condition of probation, to abide by the terms of a protective order restricting or denying visitation. Rather, the entry of such an order is one of the many possible conditions of probation which the court may impose after conducting a sentencing hearing. Here, the defendant had such a hearing on April 11, 1985, the day on which the order from which appeal was taken was entered. At that time the information supporting the entry of the protective order was brought before the court. Then, on the next day, April 12, 1985, the court had the defendant again brought into court and explained to defendant (1) the court's intention in regard to defendant's credit for time spent in jail, and (2) that the court had considered section 607 of IMDMA in making the protective order and found that permitting defendant the visitation which the order prohibited "would seriously endanger the physical, mental and emotional health of the minor child." Thus, defendant had a hearing with an opportunity to voice any objection that he had to the entry of the protective order and to counter the evidence that supported the order.

■ Defendant did not have any notice prior to the sentencing that a request was going to be made for, or that the court was going to impose, a protective order. Just as there is no statutory requirement that a convicted defendant be given notice that other conditions of probation may be imposed, there is no statutory requirement that notice of a possible protective order be given a defendant. Section 203 of IDVA (Ill. Rev. Stat. 1983, ch. 40, par. 2302—3) requires the issuance of summons to a respondent before a protective order may be entered when the request is initiated by a petition but makes no requirement for notice or summons when the order is entered pursuant to a proceeding under the Unified Code of Corrections. However, the defendant is entitled to due process. (See *In re Marriage of Hagaman* (1984), 123 Ill. App. 3d 549, 462 N.E.2d 1276.) Thus, had defendant

been taken by surprise by the court's determination to impose such a protective order and had he asked for time to present evidence in opposition to it, the court should have granted such a request. None was made here. Furthermore, as we will subsequently explain, under the circumstances here, defendant had every reason to believe, prior to hearing, that a further protective order might be entered against him. He suffered no violation of due process.

Defendant's experience with protective orders was indicated by the record before the court at sentencing to be extensive. It showed that by a previous order of the circuit court of Calhoun County in a dissolution proceeding between defendant and his then wife, Ruth Ann Hazelwonder, he was enjoined from striking, threatening, harassing, or interfering with the personal liberty of her or the party's baby child. On May 17, 1984, Ruth Ann Godar, formerly Hazelwonder, petitioned the Champaign County circuit court for an *ex parte* order of similar purport, and such an order was granted. That order suspended defendant's visitation rights with the daughter. On hearing, that order was modified only to the extent that defendant was permitted visitation at specific times. The visitation was conditioned upon defendant's receiving treatment at a local mental health clinic. Violation of that protective order gave rise to defendant's conviction of September 5, 1985.

■■ The trial court's finding that visitation by defendant with the child "would seriously endanger the physical, mental and emotional health of the minor child" was sufficiently supported by the evidence. He had repeatedly violated previous orders by harassing his former wife. For that reason alone, visitation would be very difficult to arrange without creating situations where defendant's tendency to lose control of himself would be likely to have occurred with unpredictable results. The presentence report and attached records from a mental health facility at which defendant had been a patient bear out that defendant has depressive, violent, even suicidal tendencies. The trial court indicated a fear that defendant might use the child as a weapon against the wife if he could not otherwise punish her. The record indicated that such a concern was not unfounded.

Moreover, the prohibition against defendant having visitation with the child was limited by the phrase "without order of [that] court," thus indicating that upon sufficiently changed circumstances whereby a procedure for effective visitation might be viable or upon a special need for visitation, the court might permit it. In any event, the restriction would last no longer than the 12-month term of the probation. Given the purpose of IDVA and the legislative provision that it

be liberally construed (*In re Marriage of Hagaman* (1984), 123 Ill. App. 3d 549, 462 N.E.2d 1276), no stronger proof was necessary even though the right of a parent to visit his or her child is not one to be summarily denied.

■ The defendant argues that the trial court erred in failing to specifically articulate the basis for the foregoing findings. In *Hagaman*, we stated that where, as here, the statutorily required findings are supported by the evidence, reversal for lack of further specificity would not be proper. Moreover, at neither the April 11, 1985, sentencing hearing nor on the next day, when he was before the court, did the defendant raise any question as to the lack of more detailed findings or reasons for the order denying visitation. The proceeding was a sentencing. In such a proceeding, the failure of the court to give a sufficiently detailed explanation for the terms of the sentence imposed is waived by the failure to raise the issue before the sentencing court. *People v. Davis* (1982), 93 Ill. 2d 155, 442 N.E.2d 855.

■ Defendant's final argument is that the restriction against his visitation with his child is a condition of probation which does not relate to either the underlying offense or to his potential for rehabilitation. However, the protective order for the violation of which defendant was convicted was for the purpose of protecting his former wife. His propensity for the type of conduct that gave rise to the offense is the reason that he presents a danger to his child. From the standpoint of his rehabilitation, the evidence indicated that it would be desirable to remove him temporarily from situations which might lead him to repeat his improper conduct. The nexus between the protective order and both the underlying offense and the defendant's rehabilitation was sufficiently shown.

Affirmed.

WEBBER and SPITZ, JJ., concur.