YELVERTON, Judge.
This is an appeal from a summary judgment in favor of a doctor in a suit to recover damages for disfiguring scars following surgical removal of tattoos. We reverse and remand the case to the trial court for further proceedings.
Lovenia Williams had several homemade tattoos on her arms and legs that she wanted removed. She consulted with and authorized Eugene S. Fields, a medical doctor, to remove them. On March 27, 1985, she executed a consent form which indicated that “disfiguring scars” may result from this medical treatment. On the same day Dr. Fields removed the tattoos.
Dissatisfied with the result, Lovenia sued the doctor for damages. She alleged two grounds, malpractices and the lack of informed consent. She has since abandoned the malpractice claim. All that she now pursues is the allegation that her consent to the surgical procedure was based on the erroneous and false representation of the doctor that the procedure employed would leave little or no disfigurement. She alleged in her petition that the procedure in fact left large and unsightly scars on both arms and legs, and that the skin in the area of the scars remains extremely sensitive and easily irritated.
The doctor moved for summary judgment and in support of the motion filed the signed consent form, as well as the depositions and reports of two plastic surgeons, Dr. Hamid Massiha and Dr. Darrel L. Henderson.
The deposition of Dr. Massiha contains this:
Tattoo removal is a very difficult thing and patients should understand that, and sometimes I talk them out of it, because they often form scars like this.
And elsewhere, responding to a question asking him to explain what he tells patients about scar formation, Dr. Massiha responded:
You just say that ‘You may have terrible scars. Do you want to trade the scar for a tattoo,’ and some people do because they’re embarrassed by the tattoo and a scar is not as embarrassing as a tattoo.
According to his written report which is attached to his deposition, Dr. Massiha, on examination of Lovenia, found eight tattooed areas that had been surgically affected. All eight were hyperpigmented and scarred. In this report he explains that there are at least two methods of tattoo removal. One is called Staged Excision, and the other is called the Brown Derma-tome method. In his report he stated that the Dermatome method is an accepted procedure for removal of the tattooed skin. He adds, however:
Of course, when this procedure is done, it is possible that scar tissue will form. The possibility of hypertrophic scar formation is present for everybody but is much increased in people with dark pigmented skins like orientals, or Spanish people, especially blacks.
The plaintiff in this case is black. The procedure used in the removal of her tattoos was the Brown Dermatome method.
Dr. Darrell L. Henderson, the other plastic surgeon whose views were included in the summary judgment evidence, rendered a report that said that once a person has a tattoo, “the patient is destined for ever and ever to have either the tattoo or an ugly scar. There really is no compromising between.”
When the above described evidence — the signed consent form, and the depositions and reports of Drs. Massiha and Henderson — were offered by defendant in support of his motion for summary judgment, the issues were malpractice and lack of consent. As stated earlier, the plaintiff *22 has now abandoned the malpractice claim. The scope of the case is thus narrowed to lack of consent.
The plaintiff made no response to the motion for summary judgment. (Along with her application for a new trial, the plaintiff filed depositions, affidavits, and medical reports urging her entitlement to a new trial, but the trial judge, in denying the new trial, ruled that these offerings came too late.) In granting the motion for summary judgment for defendant, the trial judge relied on the rule that an adverse party may not simply rest on her allegations, but must respond with a showing that there is a genuine issue for trial. In the present case the trial judge concluded that the plaintiffs failure to respond to the motion for summary judgment, meant that she failed to produce any evidence to support her allegations that the consent was induced by misrepresentation of material facts. The trial judge, concluding that she had failed to carry her burden of proof, rendered summary judgment against the plaintiff.
LSA R.S. 40:1299.40 states that written consent to medical procedures which sets forth in general terms the known risk of death, brain damage, quadriplegia, paraplegia, loss of or loss of function of any organ or limb or disfiguring sears, when signed by the patient, “shall be presumed to be valid and effective, in the absence of proof that execution of the consent was induced by misrepresentation of material facts”.
By the statute’s plain language, consent to a medical procedure is invalid if it is induced by a doctor’s misrepresentations. The presumption of validity created by the statute, and relied on by the trial judge in the present case, ceases to exist where consent is vitiated by misrepresentation of material facts.
Whether there was a misrepresentation is a question of fact. The question of fact is: did Dr. Fields represent to the patient that there would be little or no scarring as a result of the Brown Dermatome procedure? As to this question, in a trial on the merits the patient has the burden of proof. Hondroulis v. Schuhmacher, 553 So.2d 398 (La.1989).
The trial judge regarded the signed consent form as summary judgment evidence establishing the presumption of R.S. 40:1299.40. The trial judge then required that the plaintiff make prima facie proof of her whole case at the motion for summary judgment stage, despite the fact that the defendant had failed to put on any summary judgment factual evidence to refute the allegation of misrepresentation.
La.C.C.P. art. 967 declares that when a motion for summary judgment is made and supported by pleadings, depositions, answers to interrogatories, admissions, and/or affidavits, the adverse party may not rest on the mere allegations or denials of his pleading. We find in the present case that the doctor failed to support his motion for summary judgment, with evidence that there was not a genuine issue for trial on the subject of misrepresentation. An analysis of his evidence at the summary judgment hearing shows this to be so.
The inclusion of the signed consent form did not establish consent, or a presumption of valid consent, because the petition alleged that the consent was based upon misrepresentations afe to material facts. Thus, the consent form itself is not proof of anything regarding that issue. Neither the deposition of Dr. Massiha nor the medical report of Dr. Henderson made any contribution to the subject of misrepresentation of material facts, other than Dr. Mass-iha’s observation that he was not there and did not know what Dr. Fields told the patient.
Significantly, there is nothing in the summary judgment evidence from Dr. Fields himself, other than an answer to the petition denying the allegations. Thus, the record is effectively stripped down to a petition and an answer, one alleging and the other denying that a misrepresentation occurred.
Clearly, a summary judgment cannot be granted on these pleadings. The judgment is vacated and set aside, and the matter is *23 remanded to the trial court for further proceedings.
REVERSED AND REMANDED.