*In re* M.P., a Minor (The People of the State of Illinois, Plaintiff-Appellee, v. M.P., a Minor, Defendant-Appellant).

First District (3rd Division)   No. 1—96—3307

Opinion filed June 30, 1998.

Rita A. Fry, Public Defender, of Chicago (Lindsay Huge, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Eileen N. O'Neill, Assistant State's Attorney, of counsel), for the People.

JUSTICE BURKE delivered the opinion of the court:

Following a bench trial, the circuit court found defendant M.P., a minor, delinquent based upon the charge of criminal trespass to a vehicle. The trial court sentenced defendant to one year of probation and 100 hours of community service, and ordered, as conditions of his probation, a TASC referral, Gang Intervention Program, mandatory schooling, a 7 p.m. curfew and defendant's "removal of his tatoos" pursuant to the Juvenile Court Act of 1987 (705 ILCS 405/5—1 *et seq.*

(West 1992)). On appeal, defendant contends that the trial court abused its discretion in ordering that, as one of the conditions of his probation, he remove tattoos on his arms which symbolized an alliance to a street gang. For the reasons set forth below, we reverse and remand.

On February 12, 1996, defendant, who was 16 years old, was stopped by Officer McDermott of the Chicago police department after he allegedly committed a traffic violation while operating a motor vehicle. When Officer McDermott ran the vehicle identification number, he discovered that the vehicle had been reported stolen. McDermott arrested defendant and brought him to the 14th District police station, where defendant told McDermott that he rented the car from a person named "Fresh" for $70. Defendant was charged with possession of a stolen vehicle and criminal trespass to a vehicle. After a bench trial, the trial court found defendant delinquent based on criminal trespass to a vehicle. Defendant orally objected to the condition of the tattoo removal.

Prior to defendant's sentencing hearing, defendant's probation officer presented the court with a social investigation report regarding defendant. The report revealed that defendant had been a member of the Imperial Gangsters street gang for approximately five years. Defendant was very proud of his gang, within which he was considered the "enforcer." In fact, defendant was with his gang friends when he was arrested. The probation officer specifically noted that defendant had two tattoos, a pink panther with a crown on one upper arm and a bulldog with a crown on the other upper arm, which the officer described as "gang related." The probation officer felt that, considering defendant's "heavy gang involvement," defendant "probably had some idea that renting a car for $70 was not legitimate." The report also disclosed that, as a result of his gang involvement, defendant was shot in the leg in December 1995.

The report further stated that defendant attended school past the ninth grade until he was kicked out for gang fighting. While in school, defendant was enrolled in special education and behavioral disorder classes. Defendant stated that he liked school; however, he had numerous problems with teachers and other gangs in school. The probation officer believed that defendant had a lack of enthusiasm and interest in school, but noted that defendant appeared to be "extremely talented" in pursuing his interest in drawing. The report also stated that defendant told the probation officer that he had a good relationship with his mother and her boyfriend, with whom defendant was currently living, and that he often took care of various chores in the home. However, the probation officer noted that there appeared to be

heavy gang activity throughout the neighborhood where defendant then resided. Defendant's mother reported that defendant had been complying with the 7 p.m. curfew imposed on him by the trial court at the inception of this case.

At defendant's sentencing hearing, the following colloquy occurred:

"THE COURT: What's one reason why you're here?

THE RESPONDENT: For the auto theft.

THE COURT: Well, that's the case, but what brings you here?

THE RESPONDENT: (No audible response.)

THE COURT: You don't even know, do you?

THE RESPONDENT: (No audible response.)

THE COURT: It's the gangs, right?

THE RESPONDENT: Yes, sir.

THE COURT: Right. And you're rather proud to be an Imperial Gangster, right?

THE RESPONDENT: (No audible response.)

THE COURT: See, you can't even answer it because you are, and the gangs are going to get you where?

THE RESPONDENT: Nowhere.

THE COURT: Oh, yes. This is going to be an absolute, complete waste of breath because you're so enraptured with the gangs. If you think it's just, great, well, when you are staring at some judge facing a murder charge or you're facing big time, then you make sure that you thank each and every gang member or when you get drilled with a bullet right in the head because you're an Imperial Gangster, then you can thank all your gang members with your last dying breath, okay?"

On June 13, 1996, defendant filed a motion to modify the May 22, 1996, probation order, arguing that "on information and belief, the only tattoo the minor has is an 'M' on his leg which stands for Miguel," and that, because the Act does not authorize removal of a minor respondent's tattoos, the trial court should amend its May 22 order to exclude tattoo removal as a condition of defendant's probation. At a hearing on defendant's motion on August 14, 1996, defendant argued that the condition of tattoo removal was an intrusive and punitive procedure not warranted under the Act for a Class A misdemeanor of criminal trespass to a vehicle. The trial court ruled that if defendant's tattoos were in fact gang related, then it had authority to order defendant to remove them, and, on the same day, the court entered an order modifying its May 22 order "in that the minor shall only have any gang[-]related tattoos removed." This appeal followed.

Defendant contends that the trial court's August 14, 1996, modified order (order), requiring that defendant remove any gang-related tattoos, was an intrusive and illegal condition of probation not

prescribed by the Act. Defendant first argues that because the removal of his tattoos did not have a nexus to the offense for which he was found guilty, it was error for the court to impose this condition.

The State contends that the condition was within the permissible scope of the Act because the Act allows for several intrusive procedures as conditions for probation. The State also argues that the condition was reasonable and within the discretion of the trial court because the court found a connection between defendant's delinquency and his gang involvement, and "the court was attempting to do everything in its power to give this minor an opportunity to be something more than a lifelong gangmember and criminal."

The purpose and policy of the Act "is to secure for each minor *** such care and guidance, *** as will serve the moral, emotional, mental, and physical welfare of the minor and the best interests of the community." 705 ILCS 405/1—2(1) (West 1992). In proceedings under the Act, "the court may *** gather information bearing upon the current condition and future welfare of persons subject to" the Act. 705 ILCS 405/1—2(2) (West 1992). Section 5—23 of the Act sets forth various alternatives that are available to the trial court as to the disposition of a minor found delinquent under the Act, including probation and conditional discharge. 705 ILCS 405/5—23(1)(a)(1) (West 1992). When determining the appropriate disposition for a minor, the trial court may choose as it sees fit among the various alternatives provided for in the Act; however, delinquency proceedings should be considered protective rather than punitive in nature. *In re J.C.*, 260 Ill. App. 3d 872, 884, 632 N.E.2d 127 (1994). The disposition of a minor rests within the sound discretion of the trial court. *In re J.C.*, 260 Ill. App. 3d at 884. The trial court need not defer to any particular disposition under section 5—23, and its decision will not be reversed absent an abuse of discretion. *In re T.L.B.*, 184 Ill. App. 3d 213, 215, 539 N.E.2d 1340 (1989).

In determining whether a trial court's imposition of a probation condition was proper, a reviewing court considers whether the probation condition (whether explicitly statutory or not) is reasonable if the trial court believes the condition would be a good idea and the record contains no indication that the court's imposition of the condition is clearly unreasonable. *People v. Ferrell*, 277 Ill. App. 3d 74, 79, 659 N.E.2d 992 (1995). The trial court is normally the proper forum in which to determine a suitable sentence. The decision of the trial court in that regard is entitled to great weight and deference and may not be altered on review absent an abuse of that discretion. *People v. Perruquet*, 68 Ill. 2d 149, 153-54, 368 N.E.2d 882 (1977).

The Act provides that the court may, as a condition of probation,

require that the minor "refrain from having any contact, *directly or indirectly*, with certain specified persons or particular types of persons, including but not limited to *members of street gangs* and drug dealers or users." (Emphasis added.) 705 ILCS 405/5—24(2)(s) (West 1992). This court has held that, in adult probation cases, the trial court may impose a probation condition not expressly authorized by statute as long as (1) such a condition is reasonable, and (2) some connection exists between the condition and either (a) the underlying crime or (b) the behavior or attitude of the defendant that the trial court thinks needs adjusting. *Ferrell*, 277 Ill. App. 3d at 79. This court also has recently held that any "condition of juvenile probation must be reasonably related to the juvenile's rehabilitation" (*In re J.G.*, 295 Ill. App. 3d 840, 843 (1998)), and in assessing the reasonableness of the condition, the court should take into account the individual defendant (*People v. Stocke*, 212 Ill. App. 3d 547, 554, 571 N.E.2d 192 (1991)).

Defendant relies on *People v. Dunn*, 43 Ill. App. 3d 94, 356 N.E.2d 1137 (1976), in support of his argument that (1) there is no authority in the Act that allows for tattoo removal as a condition of probation, and (2) no possible connection can exist between any gang-related tattoos defendant may have and the offense of criminal trespass to a vehicle. The State contends that defendant's reliance on *Dunn* is misplaced because, in the present case, not only is the condition of probation provided for in the Act, but the trial court also found a direct connection between defendant's gang membership and his delinquency. The State also argues that "probation for a minor is viewed differently than it is for an adult," in that its focus is rehabilitative rather than punitive, and that removing tattoos symbolizing allegiance to a gang clearly is within the stated purpose of the Act. The State maintains that because the placement of a permanent mark on the body symbolizing a street gang can "clearly" be considered both a direct and an indirect indication of alliance to the gang, the tattoo removal condition was a necessary step in preventing the gang's influence over defendant. The State further argues that, although the trial court never indicated that defendant's tattoos had any connection to the crime, the court's comments to defendant regarding his gang membership indicate that the court "clearly felt that [defendant's] gang involvement was directly related to his delinquency," and that minimizing such involvement would be "a good idea." The State relies on *People v. Wells*, 90 Ill. App. 3d 320, 413 N.E.2d 218 (1980), in support of its argument that the trial court may impose conditions of probation that do not have any relationship to an underlying offense.

In *Dunn*, the court held that the trial court erred in imposing the probation condition that the defendant get a haircut after the defen-

dant was found guilty of failure to signal in violation of the Illinois Vehicle Code. *Dunn*, 43 Ill. App. 3d at 95. The *Dunn* court found that none of the conditions of probation in the applicable Unified Code of Corrections specifically provided for regulation of the length of a person's hair or personal appearance; however, the Code appeared to allow for imposition of conditions not specifically listed as long as there was a connection between the condition and the crime charged. Because there was no connection between hair length and the offense of failure to signal, the *Dunn* court held that imposing the condition concerning the defendant's hair length was error. *Dunn*, 43 Ill. App. 3d at 96.

In *Wells*, the trial court ordered as a condition of the defendant's probation after his burglary conviction that the defendant work or actively seek employment for no less than six hours a day. In affirming the trial court, the *Wells* court noted that it could not determine how the condition imposed related to the circumstances of the burglary offense because the record on appeal did not contain a transcript of the hearing in which the defendant pleaded guilty. Nonetheless, the *Wells* court held that "since the condition may also relate to the rehabilitation of the defendant," it was clearly proper. *Wells*, 90 Ill. App. 3d at 321.

In the present case, the State argues, relying on *Wells*, that even if removing defendant's tattoos does not directly relate to defendant's offense, it "surely" relates to the rehabilitation of defendant. The State further argues that permanently marking one's body with a gang symbol can, within the language of section 5—24(2)(s), clearly be considered both a *direct and indirect* indication of alliance to a gang. Accordingly, the State concludes that the tattoo removal condition was properly imposed under the Act.

■ We find that even a liberal interpretation of section 5—24(2)(s) does not provide direct authority for the trial court to mandate such an intrusive measure as ordering tattoo removal. In construing a statute, this court must ascertain and effectuate the legislature's intent by looking first to the statutory language itself. If the language is clear, the court must give it effect and should not look to extrinsic aids for construction. *Ferrell*, 277 Ill. App. 3d at 77. Contrary to the State's argument that *Dunn* is inapposite to the case at bar because the condition in the court's order here was specifically provided for in section 5—24(2)(s) of the Act, a plain reading of the section clearly indicates that it authorizes restraining a minor from having direct or indirect contact with certain types of *persons* and does not provide for the specific condition of tattoo removal. We therefore hold that the Act by its own terms does not directly or indirectly provide for tattoo removal.

■ Because tattoo removal was not expressly provided for as a condition of probation in the Act, we next determine whether the condition was reasonable. In *Ferrell*, where the defendant was found guilty of aggravated battery of her child and ordered not to engage in acts that were reasonably likely to cause her to become pregnant and to submit to blood testing every two months for the purpose of pregnancy detection as conditions of her probation, the court considered whether the conditions were reasonable and sufficiently related to the underlying crime. In the present case, even though the trial court may have found that some connection existed between the condition of tattoo removal and the underlying crime because defendant was with members of his gang when he committed the crime, or that there was a connection between defendant's commission of the crime and his "gang attitude," the resulting condition must nonetheless be reasonable when taking into account the individual defendant. While the record reflects that defendant was heavily involved in and proud of his gang, it also reflects that defendant had other interests and talents, such as drawing, and that defendant had been complying with his curfew order and "getting along" with his mother. Under these circumstances, a probation condition for a delinquency charge of criminal trespass to a vehicle ordering tattoo removal for this defendant was clearly an unreasonable, impermissible and completely unrelated imposition when viewed in light of the purpose of the Act to secure "care and guidance" that will serve the "emotional, mental, and *physical* welfare of the minor." 705 ILCS 405/1—2(1) (West 1992). It is difficult to imagine how tattoo removal would relate to rehabilitation of defendant as, for example, the condition of holding a job or actively seeking employment did in *Wells*.

This court has, in cases not cited by either defendant or the State, considered the issue of whether a trial court exceeded the scope of its authority when imposing conditions of probation and has determined that the conditions in those cases were unreasonable. See, *e.g.*, *People v. Meyer*, 176 Ill. 2d 372, 373, 680 N.E.2d 315 (1997) (the court held that posting large signs at all entrances to the defendant's family farm reading, "Warning! A violent felon lives here. Enter at your own risk!" was not a reasonable condition of probation for the defendant who was found guilty of aggravated battery because the sign, which contained a strong element of public humiliation, might actually hamper its intended goal of rehabilitation and cause problems of greater magnitude); *People v. Johnson*, 174 Ill. App. 3d 812, 528 N.E.2d 1360 (1988) (the court held that in ordering the defendant to make an advertised apology for the offense of driving under the influence, the trial court exceeded the intent of the statute and warned that trial

courts should not impose unconventional conditions of probation that may have unknown consequences, even when the overall intent of the trial court appears to aid the defendant in rehabilitation and avoiding future violations).

On the other hand, we recognize that this court held in *Stocke* that presenting a speech to driver's education students on the effects of driving too fast for conditions was a reasonable probation condition for the 18-year-old defendant found guilty of that offense. *Stocke*, 212 Ill. App. 3d at 555. The *Stocke* court determined that the record reflected that the trial court carefully considered the defendant's ability to perform the condition, and that the condition was related to the offense.

In the present case, unlike the record on appeal in *Stocke* which adequately reflected that the trial court carefully considered the defendant's ability to perform the condition, the record on appeal here is entirely devoid of information regarding the exact medical procedure that defendant would have to undergo to remove his tattoos. The record contains no evidence as to the pain, if any, involved in the tattoo removal procedure and the monetary costs of such a procedure. We observe, however, that courts in other jurisdictions have had the occasion to examine the consequences of tattoo removal. See, *e.g., People v. Page*, 104 Cal. App. 3d 569, 163 Cal. Rptr. 839 (1980) (expert testimony established that tattoos were "permanent" and that an attempt to remove them would "leave permanent scarring for life"); *Williams v. Fields*, 570 So. 2d 20 (La. Ct. App. 1990) (expert testimony established that there is a possibility of scar formation after tattoo removal); *Stephenson v. Davenport Community School District*, 110 F.3d 1303 (8th Cir. 1997) (the record contained evidence that laser treatment for the removal of a tattoo, at a cost of approximately $500, requires burning through four layers of skin followed by two months of treatments where the skin is scraped with a razor blade to prevent bleeding of the tattoo). In light of the above authority, we note that forcing defendant here to remove his tattoos may actually hamper the intended rehabilitative goal of the court because it may be considered a humiliating, not to mention painful, procedure for this young defendant.

■ Furthermore, we find that the State's argument, that imposing a condition that would comply with the direct language of section 5—24(2)(s) which would require that defendant refrain from contact with gang members may be difficult because defendant was living in an area populated heavily by gangs, is without merit. The Act contains no provision stating that its express conditions can only be imposed when it would not be "difficult" to impose such conditions. It is

undoubtedly difficult to enforce the condition provided in section 5—24(2)(s) in any given situation where it is ordered. Furthermore, we are not persuaded that the facts in this case offer a uniquely "difficult" situation in which enforcement of the condition would be exceptionally difficult. We therefore hold that the condition in this case was not a reasonable condition of probation within the scope of the Act. While the trial court is afforded a great deal of discretion in issuing conditions of probation, ordering tattoo removal was not a reasonable measure of rehabilitation for defendant in the present case and was therefore an abuse of that discretion.

■ The State also maintains that defendant's argument, that the order was "intrusive," is without merit because the Act allows for several intrusive procedures as conditions for probation, one of which is section 5—24(2)(u), providing that a court may order a minor to provide samples of his or her blood or urine for tests to determine the presence of an illicit drug. 705 ILCS 405/5—24(2)(u) (West 1992). A court also may order a minor found delinquent of a sexual offense to undergo medical testing, which may include an analysis of bodily fluids and an examination of the minor's person. 705 ILCS 405/5—23(9) (West 1994). The State further argues that reviewing courts have also approved of several "intrusive" conditions of probation which were not specifically provided for by statute, i.e., *People v. Ferrell*, 277 Ill. App. 3d 74, 659 N.E.2d 992 (1995) (the court upheld the condition that the defendant submit to blood testing every two months for the purpose of detecting pregnancy after the defendant was convicted of aggravated battery of her child), and *People v. McDonald*, 52 Ill. App. 2d 298, 202 N.E.2d 100 (1964) (the court upheld mental institutionalization as a proper condition of probation for rehabilitative purposes after the defendant was found guilty of aggravated battery and expert testimony established that he was a dangerous individual capable of homicide). None of these cases, however, even those upholding mandatory laboratory blood and urine samples, imposed conditions as directly intrusive to the human body as the removal of a permanent tattoo. Even though the overall intent of the trial court here in ordering the condition was to positively dissuade defendant from associating with gangs, we find, as did the *Johnson* court, that mandating such an unconventional condition may give rise to unknown consequences.

■ We also find the State's argument, that the condition of tattoo removal in the present case was reasonable because Illinois courts have even approved of the restriction of several different constitutional protections as conditions to probation, is unpersuasive under the facts of this case. In support of its argument, the State cites to *People v. Ei-*

*land,* 217 Ill. App. 3d 250, 576 N.E.2d 1185 (1991), where the court upheld the probation condition that the defendant submit to searches of his "person, residence, papers, automobile and/or effects" at any time the probation officer requested. After the defendant was arrested for possession of ammunition and illegal drugs revealed in a search pursuant to the condition, the court held that the condition was a justified departure from the fourth amendment requirements of a warrant or probable cause. *Eiland,* 217 Ill. App. 3d at 257.

Likewise, the State notes that our supreme court in *People v. Adams,* 149 Ill. 2d 331, 597 N.E.2d 574 (1992), upheld the probation condition requiring submission to an HIV test by the defendants convicted of prostitution as not violative of their right to equal protection of the laws and not an invalid search and seizure. *Adams,* 149 Ill. 2d at 352-54. The court's determination was based on its weighing of the "important governmental [interest]" in protecting the public from a disease with no known cure against the minimal intrusion of submitting the defendants to a "minor, routine laboratory procedure" that "poses no threat to the health or safety of the individual tested." *Adams,* 149 Ill. 2d at 344-47. The court also noted in its holding that "offenders necessarily have reduced expectations of personal privacy." *Adams,* 149 Ill. 2d at 348. See also *People v. Hazelwonder,* 138 Ill. App. 3d 213, 485 N.E.2d 1211 (1985) (the court upheld a probation condition that prohibited the defendant from having any visitation with his minor child after the defendant was convicted of violating an order of protection for his former wife); *People v. Pickens,* 186 Ill. App. 3d 456, 542 N.E.2d 1253 (1989) (the court held that a defendant's right to travel can be removed or restricted as a condition of probation).

We first note that none of the cases cited by the State in support of the above argument dealt specifically with the disposition of a minor in contravention with the Act. As held by the court in *In re J.C.,* delinquency dispositions are to be handled as protective rather than punitive in nature. Because the cases cited by the State were analyzed under the Unified Code of Corrections or criminal statues other than the Act, they dealt with a different standard of reasonableness than does the case at bar. See *In re J.G.,* 295 Ill. App. 3d 840 (1998). Moreover, the cases cited by the State can be distinguished on their facts. Probation conditions such as ordering a defendant to submit to routine laboratory blood testing during probation after she was found guilty of aggravated battery of a child (*Ferrell*) or prostitution (*Adams*), or ordering placement of a defendant in a mental hospital for rehabilitative purposes (*McDonald*), are hardly as intrusive as ordering a minor defendant found delinquent of criminal trespass to a vehicle to permanently remove tattoos. Such a condition not only directly

interferes with personal bodily appearance, as the impermissible haircutting condition did in *Dunn*, but it also is of such a permanent nature that it will affect defendant far beyond his probation period of one year.

Defendant next argues that the order is unconstitutional because it is vague, overbroad and prohibitive of his rights to engage in "symbolic speech." Specifically, defendant argues that the order is vague because it does not indicate which, if any, tattoos should be removed. Defendant argues that the trial court neither established what type of tattoos would qualify as "gang related" tattoos nor did the court ever indicate that defendant's tattoos, if there were any, had any connection to the criminal trespass to a vehicle charge for which defendant was found delinquent. In asserting his "unconstitutionality" argument, defendant relies on *City of Harvard v. Gaut*, 277 Ill. App. 3d 1, 660 N.E.2d 259 (1996), where the reviewing court invalidated a city ordinance that prohibited the wearing of gang colors, emblems or other insignia, after determining that the conduct prohibited in the ordinance included a wide and undefined range of clothing and jewelry that is not necessarily gang related. *Gaut*, 277 Ill. App. 3d at 4. In *Gaut*, the defendant was arrested and prosecuted for wearing a six-pointed star, which was believed to be a gang symbol. Defendant argues that because the *Gaut* opinion "exemplifies that gang colors or symbols could be almost anything, [it] shows that [the order] directed against [him] is vague and overbroad as well."

First, while defendant argued in his motion to modify the trial court's May 22, 1996, order that the only tattoo he had was an "M" on his leg, the findings of the social investigation prove otherwise. Because the probation officer stated that defendant had two specifically located, gang-related tattoos, defendant's argument that the order was vague because it did not indicate which tattoos should be removed is without merit. Moreover, other than these two gang-related tattoos and the alleged "M" tattoo on defendant's leg, the record contains no further evidence of other tattoos. Second, defendant's conclusory assertion that the *Gaut* holding "shows" that the order in this case is unconstitutional, vague and overbroad is unsupported by reasoned argument. When an appellant seeks reversal, theories that are not pursued or advanced with citation to relevant authority are deemed waived. *People v. Wendt*, 163 Ill. 2d 346, 356, 645 N.E.2d 1794 (1994). Moreover, because there is sufficient evidence in the record that the order was not reasonable under the standards set forth in the Act, this court need not specifically address the constitutional issues that defendant merely references in his brief.

Lastly, we note that in *People ex rel. Gallo v. Acuna*, 14 Cal. 4th

1090, 929 P.2d 596, 60 Cal. Rptr. 2d 277 (1997), cited as additional authority by the State, the California Supreme Court rejected the defendants' argument that gang affiliations are protected by the first amendment guarantee to the right of "social association." The State in this case argues that, like the defendants in *Acuna*, defendant's gang tattoos are not protected by the first amendment. Our supreme court, however, has recently reached a different result on the related issue of whether restricting the general activities of street gang members violates substantive due process. In *City of Chicago v. Morales*, 177 Ill. 2d 440, 687 N.E.2d 53 (1997), the court held that a city "gang loitering" ordinance was violative of substantive due process because persons suspected of being involved in street gangs under the terms of the ordinance were deprived of their right to freely walk the streets and associate with friends. *Morales*, 177 Ill. 2d at 460-61.

This court does not find substantial merit in the State's reliance on *Acuna*, a California case having no precedential effect on this court. The issue in this case is the reasonableness of a condition of probation, which is reviewed under a different standard than the preliminary injunction at issue in *Acuna*. Moreover, in light of *Morales*, the State's reliance on the reasoning in *Acuna* as supportive of the reasonableness of the condition imposed in this case is inapposite. Although the *Morales* court did not specifically rule on the first amendment issues raised by the defendants in that case, the language and reasoning of the holding indicates that our courts are willing to afford persons "suspected" of criminal gang activity, at the very least, the "personal liberty" of walking the streets and associating with friends.

For the reasons stated, we reverse the trial court's August 14, 1996, order and remand this cause for further proceedings consistent with this order.

Reversed and remanded.

McNAMARA and WOLFSON, JJ., concur.