# Illinois Official Reports

## Appellate Court

---

### *In re Jawan S.*, 2018 IL App (1st) 172955

---

| | |
|---|---|
| Appellate Court Caption | *In re* JAWAN S., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Jawan S., Respondent-Appellant). |
| District & No. | First District, Fourth Division<br>Docket No. 1-17-2955 |
| Filed | June 29, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-JD-01262; the Hon. Kristal Royce Rivers, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Stephen L. Gentry, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, and Ashlee Cuza, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE ELLIS delivered the judgment of the court, with opinion.<br>Justice McBride concurred in the judgment and opinion.<br>Justice Gordon specially concurred, with opinion. |

**OPINION**

¶ 1    After a bench trial in juvenile court, 17-year-old minor-respondent, Jawan S., was found guilty of aggravated unlawful use of a weapon (AUUW) and unlawful possession of a firearm (UPF). Respondent was adjudicated delinquent and sentenced to two years of probation. As conditions of his probation, the juvenile court required, among other things, that respondent "shall refrain from all illegal gang, guns, [and] drug activity" and that "none shall be displayed on his social media."

¶ 2    Respondent contends that the gang and social-media restrictions were an abuse of the juvenile court's sentencing discretion and that they unduly burden his first- and fifth-amendment rights. These alleged errors are unpreserved, but respondent contends that they are reviewable as first-prong or second-prong plain error, or alternatively, that his attorney was ineffective for failing to object to either restriction. Lastly, respondent contends that section 5-715(2)(s) of the Juvenile Court Act of 1987, which authorizes the juvenile court to prohibit a probationer from having "any contact, directly or indirectly, with *** members of street gangs," is facially unconstitutional because it is vague. See 705 ILCS 405/5-715(2)(s) (West 2016). For the reasons that follow, we find no error at all and thus affirm respondent's probation conditions.

¶ 3                    I. BACKGROUND
¶ 4    Around 11:20 p.m. on July 1, 2017, Officer Zondranika Williams of the Chicago Police Department heard several gunshots while on patrol near 87th and State Streets. From her vehicle, she saw respondent about 40 feet away, running down the street. He had a large silver handgun with an extended clip in his right hand. Officer Williams called for backup, turned into a gas station where respondent was running, and tried to "cut him off" by pulling her vehicle in front of him. Respondent dodged the squad car and ran behind the gas station's convenience store. But he had nowhere to go from there; as Officer Williams testified, there was no exit point behind the building. When respondent emerged a few seconds later, he was no longer carrying the firearm. Officer Williams and her partner left their vehicle, ordered respondent to the ground, and placed him in custody.

¶ 5    Several officers, including Officer Robert Zieman, soon arrived on the scene. Officer Williams told them that respondent had a gun before, but not after, he ran behind the convenience-store building. While searching the area behind the store, Officer Zieman saw a handgun on the roof of the store and retrieved it. He testified that it was a stainless steel, .45-caliber semi-automatic with a long, 16-round extended magazine. Officer Williams testified that it was the same gun respondent was carrying when she saw him running down the street. Officer Williams later processed respondent at the station, where she learned, based on his birthday, that he was too young to have been issued a valid Firearm Owner's Identification (FOID) card.

¶ 6    The juvenile court found Officers Williams and Zieman credible, and thus found, based on their testimony, that respondent "clearly had a gun that he was carrying" before throwing it on the roof of the convenience store. The juvenile court entered findings of guilt on all charges.

¶ 7    Before continuing the case for sentencing, the judge told respondent that she was taking him off of electronic monitoring (based on the positive report of his pretrial compliance) and

imposing an 8 p.m. curfew. Respondent told the judge that the curfew would prevent him from working the late shift, which he often did, at his job. The judge made an exception to the curfew to accommodate respondent's work schedule.

¶ 8    Before sentencing, the juvenile probation department prepared a Social Investigation Report. Among other things, the report detailed respondent's history of foster care since he was first removed from his mother's custody at the age of 14. For a time, respondent was placed with his aunt, but "conflict" with the other children in the house led the Department of Children and Family Services (DCFS) to move him to his present foster home. Once he arrived, respondent "began to miss school" (although he was on track for a timely graduation) and "spent time with negative peers." The report stated that, according to the Chicago Police Department, respondent was "an alleged member of the Gangster Disciple Eight Tray Mob." Respondent, for his part, denied that he was gang-affiliated or that he spent time with any negative peers.

¶ 9    The report also detailed respondent's own account of the offense, as he conveyed it to the probation officer. Respondent said that he was at the McDonald's on 87th and State Streets with a friend when some "enemies from a past incident in the neighborhood," who were driving by, started shooting at him. Respondent ran. A few minutes later, he "found himself fighting with the shooter and took a gun away from him." Respondent ran to a nearby gas station and threw the gun, a .45-caliber silver handgun, on the roof. Gas station employees pointed respondent out to the police, and he was arrested after the officers found the gun.

¶ 10    After reviewing respondent's social history, and discussing his current employment and future career goals with him at some length, the juvenile court sentenced respondent to two years' probation, subject to various conditions, including mandatory school and keeping a job (or in lieu of a job, community service). At the hearing, the judge instructed respondent as follows:

> "Clear your social media of gangs, guns, and drugs. Stay away from gangs, guns, and drugs. What I mean by clear your social media is make sure you're not even pointing your finger at the camera. I want nothing that looks like a gun.
>
> You are too young to smoke cigarettes. I want nothing that looks like you're smoking anything. I don't know if it's a cigarette. I don't know if it's a blunt. Neither of those are showing up on your social media anywhere."

Counsel did not object to any of these conditions, and respondent acknowledged that he understood them. On the written probation order, entered on a standard, preprinted form, the judge checked the box for "no gang contact or activity" and wrote "unlawful activity or its promotion" next to that condition.

¶ 11    Three weeks later, on November 22, 2017, the juvenile court recalled respondent's case to modify the conditions of his probation. Respondent's attorney was present and, at counsel's request, the juvenile court waived respondent's appearance. The judge then addressed respondent's probation conditions:

> "[I]n light of the Appellate Court's recent ruling, the Court's original order restricting the minor from gangs, guns, and—or all gangs, guns, and drug contact along with posting on social media will be revoked. The minor is to stay away from illegal gang, gun and drug activity and not post anything that is obviously illegal on his websites or on any social media."

¶ 12     The juvenile court entered a contemporaneous written order stating as follows:

> "Minor's sentencing restricting gang, guns, & drugs & the prohibition of their display on social media is hereby vacated. Minor shall refrain from all illegal gang, guns & drug activity & none shall be displayed on his social media."

Counsel did not object to the modified probation conditions. The juvenile court entered its order *nunc pro tunc* to November 1, 2017, the date of respondent's sentencing hearing. This appeal followed.

¶ 13                                    II. ANALYSIS
¶ 14                                A. Abuse of Discretion
¶ 15     First, respondent contends that the juvenile court abused its discretion in imposing any gang restrictions at all, whether in person or on social media. Respondent offers only one reason for this conclusion: There was no evidence that his offense was gang related, or even that he was a member of any gang.

¶ 16     Delinquency proceedings seek to protect and rehabilitate, not to punish, minors. *In re D.S.*, 198 Ill. 2d 309, 328 (2001); *In re R.H.*, 2017 IL App (1st) 171332, ¶ 15; see 705 ILCS 405/1-1 *et seq.* (West 2016). The juvenile court has wide discretion to impose conditions of probation (whether expressly authorized by the juvenile probation statute or not), as long as they are consistent with these protective and rehabilitative aims. *In re J.C.*, 260 Ill. App. 3d 872, 884 (1994). Like other aspects of sentencing, juvenile probation conditions are thus reviewed for an abuse of discretion (*In re M.P.*, 297 Ill. App. 3d 972, 976 (1998)), which occurs when a ruling is "arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *People v. Patrick*, 233 Ill. 2d 62, 68 (2009). Generally, a condition will not be deemed unreasonable if it has some connection either to the specific crime committed, or to the "behavior or attitude," more generally, that needs "adjusting" if the probationer is to rehabilitate. See *In re J.W.*, 204 Ill. 2d 50, 79 (2003); *R.H.*, 2017 IL App (1st) 171332, ¶ 17.

¶ 17     We disagree with respondent's contention that the record does not support a finding of any gang activity, either in the specific context of his offense, or in the context of his life more generally. It is true, as respondent says, that the *trial* evidence did not reveal any gang activity—for example, a display of gang signs by the shooter(s). Officer Williams did not see the shooting; she only heard gunshots in the vicinity, and then saw defendant running down the street after the shooting was already over. So the only account of the shooting available to the juvenile court at the time of sentencing was respondent's own. As he told the probation officer, his "enemies from a past incident in the neighborhood" stumbled upon him while driving by a McDonald's and tried to kill him. If that was not a textbook example of rival gang violence, it surely seemed like one, and we cannot imagine faulting the juvenile court for thinking (if in fact the court did—it did not say one way or the other) that it probably was.

¶ 18     That inference was further supported by the Chicago Police Department's claim that respondent had been identified as an "alleged" member of the Eight Tray Mob faction of the Gangster Disciples, as well as the case worker's report that respondent had been spending time with "negative peers." Respondent denied any gang affiliation, but viewing that denial in light of the record as a whole, the juvenile court had ample reason not to believe it.

¶ 19    And suppose for a moment that these appearances were deceiving. Maybe these armed teenage "enemies" were not members of rival gangs or gang factions after all. That still would not lead us to say that the juvenile court abused its discretion in imposing gang restrictions as conditions of respondent's probation. Respondent was seen with a gun—loaded with an extended magazine—immediately after facing down his "enemies" in a violent midnight confrontation on the street. If gangs were not already a presence and a "problem" in his life, as he is at pains to deny in his brief, the juvenile court had reason to worry that they might soon be and that respondent was moving all too quickly toward a gang orientation in his life.

¶ 20    The juvenile court, acting out of concern for respondent's rehabilitation and his prospects for a successful and productive life, could take steps to head these problems off at the pass. Thus, given the conduct underlying this offense, it was not arbitrary or unreasonable for the juvenile court to conclude that gangs were indeed a "problem"—if not an actual problem, then at the very least a potentially imminent problem—that respondent urgently needed to overcome. In fashioning probation conditions aimed at restricting his gang-related activity, both in person and on social media, the juvenile court acted well within its discretion.

¶ 21    Neither of respondent's cited cases convinces us otherwise. In *M.P.*, 297 Ill. App. 3d at 979, the juvenile court abused its discretion in requiring the minor probationer to have his gang tattoos removed. M.P. was "heavily involved in and proud of his gang," and he was with fellow gang members when he committed the offense. *Id.* So the problem with this probation condition was *not*, as respondent contends here, that M.P.'s offense was not gang-related or that M.P. was not a gang member at all. Rather, requiring M.P. to remove his gang tattoos would not help—and might even hinder—his rehabilitation, since the procedure would likely be painful and humiliating and had the potential for other unintended adverse consequences. *Id.* at 979-80. The legislature evidently disagreed with this assessment, as it later amended the juvenile-probation statute to expressly authorize the removal of gang tattoos as a probation condition. See 705 ILCS 405/5-715(2)(s-5) (West 2016). These concerns are not relevant here.

¶ 22    In *People v. Dunn*, 43 Ill. App. 3d 94, 95 (1976), the trial court sentenced the defendant to two years of probation for the traffic offense of failure to signal. As a condition of his probation, the court ordered Dunn to get a haircut and to maintain a " 'personal appearance' " that met with his probation officer's approval. *Id.* The court abused its discretion in imposing these conditions, since a shorter hairdo and a more kempt appearance bore no reasonable relation to the rehabilitative goal of making Dunn a safer and more law-abiding driver. *Id.* at 96.

¶ 23    We reject any suggestion that the juvenile court acted in a similarly arbitrary and inexplicable manner here. Given the concerns, recounted above, about the actual or potential role of gangs in respondent's life, and the specific evidence that he was likely involved in a gang-related shooting immediately before his arrest, the in-person and online gang restrictions were directly related to the facts of the offense and the juvenile court's specific concerns about the potential obstacles to respondent's rehabilitation. We find no abuse of discretion.

¶ 24                    B. Constitutionality of Illegal-Gang-Activity Restriction

¶ 25    Next, respondent claims that the juvenile court ordered that he have no contact, of any kind, with any member of any gang. This probation condition, he contends, is overly broad and unconstitutional, since it unreasonably burdens his constitutionally protected liberty interests (his "right[ ] to due process") and his first-amendment right of free association. Respondent

variously casts the argument as a constitutional challenge to the specific condition imposed by the juvenile court, and then as an as-applied challenge to subsection 2(s) of the juvenile-probation statute, which authorizes the juvenile court to prohibit a probationer from having "any contact, directly or indirectly, with *** members of street gangs." 705 ILCS 405/5-715(2)(s) (West 2016). Either way, respondent argues that the no-gang-contact condition is unconstitutional for two highly overlapping reasons: (1) it does not differentiate between lawful and unlawful contact with gang members and (2) it does not provide exceptions allowing respondent to have contact with family members, classmates, coworkers, or others who might happen to be gang members, but whom respondent will unavoidably encounter in the course of his legitimate daily activities.

¶ 26 A probation condition that burdens the exercise of fundamental constitutional rights (as almost all of them do) must reasonably relate to the compelling state interest in reformation and rehabilitation. *J.W.*, 204 Ill. 2d at 78. To be reasonable in this sense, the condition must, among other things, "narrowly focus on its rehabilitative goal." *R.H.*, 2017 IL App (1st) 171332, ¶ 22. A condition is "overly broad," and thus not "narrowly drawn," if it burdens the probationer's exercise of his constitutional rights substantially more than is necessary to achieve that goal. *J.W.*, 204 Ill. 2d at 78; *R.H.*, 2017 IL App (1st) 171332, ¶¶ 22-24. The constitutionality of a probation condition, or of a statute, presents a question of law that we review *de novo*. *In re Omar F.*, 2017 IL App (1st) 171073, ¶ 56; *In re Derrico G.*, 2014 IL 114463, ¶ 54.

¶ 27 There is a threshold problem with respondent's arguments: They all take aim at an order that the juvenile court vacated and supplanted. On the standard-form probation order entered at respondent's sentencing, the judge checked the box for "no gang contact or activity." Shortly after respondent's sentencing, we held, in *Omar F.*, 2017 IL App (1st) 171073, that the same probation condition, imposed by the same judge, was unconstitutional. In response to *Omar F.*, the judge recalled respondent's case, vacated that probation condition in a written order, and imposed a new condition in its place. The new condition was set forth in the written order as follows: "Minor shall refrain from all illegal gang, guns & drug activity ***." On the record, with respondent's counsel present, the judge reiterated: "The minor is to stay away from illegal gang, gun and drug activity ***."

¶ 28 We do not review vacated orders. The proper subject of our review is the revised, no-illegal-gang-activity condition that actually governs respondent's conduct during his term of probation. Yet respondent says nothing of substance about it. Instead, he argues that the vacated, no-gang-contact condition is unconstitutional, for the same reasons we gave in *Omar F.* He then asserts, with no further analysis, that the vacated and revised conditions are "nearly identical." They are not. The revised condition is significantly and obviously narrower than the vacated condition. Indeed, it was meant to avoid precisely the objections that respondent presses. The only question for us is whether the juvenile court succeeded in avoiding those objections in its *revised* probation order. Our answer is yes.

¶ 29 In *Omar F.*, 2017 IL App (1st) 171073, ¶ 63, the minor was required, as a condition of his probation, to " 'stay away from' " and have " 'no contact' " with gangs. We did not invalidate gang restrictions in general in *Omar F.*, but we did find that the condition imposed in that case—the same condition initially imposed on respondent but later vacated—was too broad and general, and thus unreasonably burdened the minor's constitutionally protected liberty interests. *Id.* That "blanket" restriction on any contact with a gang member appeared to

prohibit even "innocuous" contact that the minor would be hard-pressed to avoid in a gang-infested neighborhood. *Id.* ¶¶ 63, 68. And it failed to make exceptions allowing the minor to have contact with gang members that he would naturally have contact with for legitimate familial, educational, or employment purposes. *Id.* ¶ 63. In particular, it prevented the minor from having any contact with his own brother, a former gang member who had turned his life around and now served as a role model for the minor. *Id.* Respondent elaborates on these points in his challenges to the no-gang-contact condition initially imposed here.

¶ 30    First, respondent contends that the no-gang-contact condition is unconstitutional because it does not differentiate between lawful and unlawful contact with gang members. Taking this condition "at face value," respondent says, he could violate it simply by going somewhere where gang members happen to be, and having even the slightest incidental and innocuous contact with them.

¶ 31    Applied to the revised, no-illegal-gang-activity condition, this argument is a non-starter. For one thing, this condition does not prohibit *contact* with anyone who is (even unbeknownst to respondent) a gang member. It prohibits gang *activity*—or more precisely, *illegal* gang activity. Innocent or incidental contact with a gang member, unrelated to the gang's illegal activities, is not within its scope.

¶ 32    Suppose, for example, respondent rides a CTA bus to work. On his way to the bus stop, he walks past a gang member who acknowledges him and says hello. Respondent wants to steer clear of gang members, as best he can, to comply with the terms of his probation. But snubbing the gang member could be risky; it might be perceived as a slight and trigger a confrontation. Respondent's concern is that he could violate his probation simply by exchanging greetings—if only for the innocent purpose of mollifying the gang member—and continuing on his way. On the revised, no-illegal-gang-activity condition, respondent would not violate his probation for the obvious reason that he has not engaged in any illegal gang activity or, for that matter, any gang activity at all. Of course, the juvenile court will find a violation if he stops to talk to the gang member about an upcoming drug deal, or a heist, or an ambush on a rival gang. But the revised condition does not prohibit the kinds of innocent, incidental contact that respondent is likely to have with gang members during the course of his ordinary daily activities.

¶ 33    Second, respondent contends that the no-gang-contact condition is overly broad because it does not carve out exceptions based on "relationship" or "social situations." He says it thus prohibits him from having any contact with family members, classmates, coworkers, or others whom he has legitimate reasons (or even a day-to-day need) to contact, but who also happen to be gang members. If this condition is strictly enforced, respondent could find himself "banished from his home, school or workplace," even though he has done nothing wrong—a result that would surely be counterproductive with respect to his rehabilitation.

¶ 34    Applied to the revised, no-illegal-gang-activity condition, this argument is also a non-starter, and for much the same reasons as respondent's first argument. If there are gang members living at respondent's foster home, for example, he will not violate his probation just by joining them for dinner. That is contact, strictly speaking, but it is not gang activity, and it is certainly not illegal. If respondent's lab partner in biology class is a gang member, and they dissect a worm together, respondent will not violate his probation. Their teenage conversation can wander in the predictable ways—to sports, music, current events, or anything else that

does not involve the prospect of respondent joining in the gang's illegal activities—without consequence. And what goes for respondent's classmates goes equally for his coworkers.

¶ 35 Respondent's arguments have no force at all against the revised, no-illegal-gang-activity condition to which he is subject. That condition easily avoids the overbreadth we found in *Omar F.*, which resulted from the use of the word "contact" without any limitation. In a gang-infested neighborhood, that sweeping order would be, for all practical purposes, impossible to comply with. And it would leave a probationer perpetually walking on eggshells. At any moment, he could violate his probation, just by doing what he was *supposed* to be doing while on probation—attending school, holding down a job, staying home at night instead of taking to the streets. See *id.* ¶ 68. That is why the condition needed to be narrowed: to allow the minor to go about his life; to engage in positive, productive activities; and to interact in innocuous ways with the people he will inevitably encounter while doing so.

¶ 36 To this end, there is more than one way the overly broad condition in *Omar F.* could have been effectively narrowed. And within constitutional limits, the juvenile court should have wide discretion to tailor gang-related conditions to individual cases. Some may call for more restrictive conditions, while others may call for less. Here, the juvenile court imposed a condition that could hardly have been any *less* restrictive. Obviously, respondent was required to refrain from *illegal* activity, gang-related or otherwise, with or without a court order, and whether or not he was on probation. If we did not affirm this condition, it is hard to imagine what kind of gang restriction could ever survive our scrutiny.

¶ 37 C. Subsection 2(s) of Juvenile Probation Statute

¶ 38 Next, respondent contends that subsection 2(s) of the juvenile probation statute is facially unconstitutional. Subsection 2(s) provides in part that the juvenile court may, as a condition of probation, require the minor to "refrain from having any contact, directly or indirectly, with *** members of street gangs." 705 ILCS 405/5-715(2)(s) (West 2016). Respondent contends that this statutory provision, "as written, is impossibly vague," and thus violates due process.

¶ 39 A statute is vague, and thus violates due process, if the requirements it imposes are not "set forth in terms definite enough to serve as a guide to those who must comply with it." *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 291 (2003). Thus, its terms must be clear enough that "a person of ordinary intelligence [has] a reasonable opportunity to know what is prohibited, so that he may act accordingly" (internal quotation marks omitted) (*id.*), without having to "guess at its meaning" (internal quotation marks omitted) (*Fagiano v. Police Board of the City of Chicago*, 98 Ill. 2d 277, 282 (1983)). And its terms must be sufficiently definite to regulate the discretion of the government officials charged with applying it, and thus to prevent arbitrary or discriminatory enforcement. *People v. Maness*, 191 Ill. 2d 478, 484 (2000); *City of Chicago v. Morales*, 177 Ill. 2d 440, 448 (1997), *aff'd*, 527 U.S. 41 (1999). Like a statute, a probation order must clearly notify the probationer of what conduct is required of him and what conduct is prohibited. *People v. Taube*, 299 Ill. App. 3d 715, 723 (1998).

¶ 40 The most glaring problem with this constitutional challenge should be obvious by now: the trial court's revised probation order was not based on this statutory provision, at least not to the letter or even particularly close to it. The revised probation condition did not bar respondent from *any* contact, directly or indirectly, with gang members. It ordered him to refrain from *illegal* gang *activity*. There is some overlap, to be sure, between the order and the statute. But there is also plenty of overlap between the court's no-illegal-gang-activity condition and the

provision in the juvenile-probation statute allowing a court to require that a minor "not violate any criminal statute of any jurisdiction" while on probation. 705 ILCS 405/5-715(2)(a) (West 2016). And there is also the catch-all provision of the statute, which permits the trial court to impose "other conditions" in its discretion. *Id.* § 5-715(2)(u).

¶ 41   If anything, subsection 2(b)'s prohibition on violating any criminal statute is the most analogous statutory provision to what the juvenile court did here. So even if it were true that subsection 2(s)'s prohibition on "contact, directly or indirectly" with gang members were facially invalid, the trial court still had ample statutory authority for the condition it imposed.

¶ 42   In other words, respondent would not be entitled to relief even if his constitutional challenge to subsection 2(s) prevailed. He cannot demonstrate that this statute caused him an injury in fact. We thus seriously question whether respondent has standing to raise this challenge. See *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492 (1988) (injury-in-fact required to confer standing to challenge statute); *People v. Greco*, 204 Ill. 2d 400, 409 (2003) (challenger "must have suffered or be in immediate danger of suffering a direct injury as a result of enforcement of the challenged statute").

¶ 43   But standing is not a prerequisite to subject matter jurisdiction; it is the State's burden to demonstrate lack of standing, and that argument may be forfeited if not timely raised. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252-53 (2010); *People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 330-31 (1997). The State had no opportunity to raise lack of standing in the juvenile court, as respondent raised no challenge to either the order or the authorizing statute below. But before this court, the State has not so much as mentioned respondent's lack of standing. That argument is forfeited.

¶ 44   Another preliminary problem here is that we do not see how a vagueness challenge may lie against a permissive statute governing conditions of probation. Typically, as we have just noted, a vagueness challenge claims that a statute is so uncertain in its terms that individuals must guess at its meaning, and thus have no idea how to conform their conduct so that they "may act accordingly." (Internal quotation marks omitted.) *Cryns*, 203 Ill. 2d at 291. That makes sense for a criminal statute—even an administrative rule with a sanction for noncompliance—that directly prohibits or prescribes a certain act because, in our everyday lives, we must conduct ourselves consistently with that prohibition or prescription. Thus, it is crucial that we understand what, exactly, it is.

¶ 45   But a permissive statute concerning probation? It does not prohibit anything, in and of itself. It does not mandate anything, either. It has no sanction for noncompliance. It is nothing more than an authorizing statute. A juvenile-court judge is not required to impose this no-gang-contact provision. Challenging a discretionary sentencing statute on vagueness grounds is thus fitting a square peg into a round hole. See *Beckles v. United States*, 580 U.S. ___, 137 S. Ct. 886, 894-95 (2017) (federal sentencing guidelines are not subject to vagueness challenge, as they "do not regulate the public by prohibiting any conduct or by establishing minimum and maximum penalties for [any] crime" but, rather, simply provide guidelines for exercise of sentencing court's discretion (internal quotation marks omitted)); *United States v. Wivell*, 893 F.2d 156, 159-60 (1990) (federal sentencing guidelines "are simply not susceptible to a vagueness challenge" because they "do not define illegal conduct: they are directives to judges for their guidance in sentencing convicted criminals, not to citizens at large").

¶ 46   The only time this statutory provision could possibly affect someone is if a juvenile court *chooses*, in its discretion, to issue an order consistent with that provision. And even then,

nothing requires the trial court to follow that statutory provision to the letter, without modifying language (this case being a perfect example). At that point, of course, juvenile respondents are not without recourse—they are perfectly free to challenge the juvenile court's *order* as an abuse of discretion or as an infringement on their constitutional rights. The statutory provision, which merely gave the juvenile court the option to impose this condition, would fall out of play at that point.

¶ 47    Simply stated, subsection 2(s) of the juvenile probation statute does not prohibit anything. It does not require respondent to guess at anything; nor does it regulate his behavior in the least. It is not the proper subject of a vagueness challenge. See *Beckles*, 580 U.S. ___, 137 S. Ct. at 894-95; *Wivell*, 893 F.2d at 159-60.

¶ 48    But if we were to consider the merits of respondent's claim, it would fail. A facial challenge fails if we can conceive of any set of circumstances in which the statute could be validly applied—including as applied to the very party before us. *People v. Garvin*, 219 Ill. 2d 104, 125 (2006) (if as-applied challenge fails, facial challenge necessarily fails); *In re M.T.*, 221 Ill. 2d 517, 537 (2006) ("[S]o long as there exists a situation in which a statute could be validly applied, a facial challenge must fail." (Internal quotation marks omitted.)). Here, if we indulge in the premise that the trial court applied subsection 2(s) of the juvenile-probation statute to respondent, the condition the court imposed was not the least bit uncertain or vague.

¶ 49    Respondent has been ordered to refrain from "illegal gang activity." Thus, the prohibited "contact" with "members of street gangs" (705 ILCS 405/5-715(2)(s) (West 2016)) is not generic contact—a "hello" in the hallway or working alongside a gang member at a part-time job—but contact with gang members specifically linked to illegal endeavors, such as drug-dealing, or theft, or acts of violence. We find it impossible to believe that respondent is left to guess at what conduct is prohibited and what conduct is not. We reject the vagueness challenge.

¶ 50                    D. Constitutionality of Social-Media Restriction

¶ 51    Lastly, respondent also challenges the social-media restriction included in his probation conditions. Having required respondent to "refrain from all illegal gang, guns, [and] drug activity," the juvenile court further required that "none shall be displayed on his social media." Respondent now contends that this social-media restriction violates his first-amendment right to freedom of expression.

¶ 52    The juvenile court restricted, to some degree at least, respondent's social-media postings on three topics—illegal gang, gun, and drug activity. The State does not contest that this is a content-based restriction, since it regulates his speech based on "the topic discussed or the idea or message expressed." See *Reed v. Town of Gilbert*, 576 U.S. ___, 135 S. Ct. 2218, 2227 (2015). Generally, content-based restrictions are highly disfavored, subject to strict scrutiny, and must be narrowly tailored to serve compelling state interests. *Id.* at ___, 135 S. Ct. at 2226. But the need to supervise a probationer, foster his rehabilitation, and protect the public permits a court to impose restrictions on his constitutionally protected freedoms that would not be reasonable to impose on the public at large. *United States v. Knights*, 534 U.S. 112, 119 (2001); *Griffin v. Wisconsin*, 483 U.S. 868, 873-75 (1987). The constitutional standards that apply to probationers, in other words, are not necessarily the same as those that apply to the public at large; thus, probation conditions that restrict the exercise of constitutional rights are considered "narrowly tailored" as long as they "reasonably relate" to the probationary goal of

rehabilitation. *J.W.*, 204 Ill. 2d at 78; *R.H.*, 2017 IL App (1st) 171332, ¶ 22. And in reviewing a juvenile probation condition, we are mindful that minors, due to their special vulnerabilities, do not enjoy the full measure of constitutional rights that adults do. *Bellotti v. Baird*, 443 U.S. 622, 633-34 (1979) (plurality opinion); *R.H.*, 2017 IL App (1st) 171332, ¶ 20.

¶ 53　　At the outset, it is important to be clear about the precise order under review. In its initial, written sentencing order, the juvenile court did not expressly mention social media at all. But at respondent's sentencing hearing, the judge instructed him as follows:

> "Clear your social media of gangs, guns, and drugs. Stay away from gangs, guns, and drugs. What I mean by clear your social media is make sure you're not even pointing your finger at the camera. I want nothing that looks like a gun.
>
> 　　You are too young to smoke cigarettes. I want nothing that looks like you're smoking anything. I don't know if it's a cigarette. I don't know if it's a blunt. Neither of those are showing up on your social media anywhere."

¶ 54　　As we have explained, the juvenile court vacated its initial order, including its condition (as the juvenile court later interpreted it) that respondent shall not "display" any "gangs, guns, or drugs" on his social media. In its place, the juvenile court entered a new written order, requiring that no "illegal gang, guns & drug activity *** shall be displayed on his social media." Speaking to counsel on the record, the juvenile court said that respondent may "not post anything that is obviously illegal on his websites or on any social media." It is the social-media restriction set forth in the revised order that is subject to our review.

¶ 55　　Respondent first contends that the social-media restriction was an unconstitutional "prior restraint"—that is, a " 'predetermined judicial prohibition restraining specified expression.' " *In re A Minor*, 127 Ill. 2d 247, 264 (1989) (quoting *Chicago Council of Lawyers v. Bauer*, 522 F.2d 242, 248 (7th Cir. 1975)). "In the context of a pending judicial proceeding," he says, a judicial order restraining speech is invalid unless it is necessary to avert a serious and imminent threat of impeding harm that cannot adequately be addressed by other, less speech-restrictive means. *Id.* at 265-66 (citing cases). Here, respondent argues that restricting his social-media use was not necessary to avert any impending harm; the juvenile court could have effectively steered him away from gang involvement just by requiring him to attend school, hold down a job, and attend youth-outreach programs—while leaving his social-media access unfettered.

¶ 56　　Respondent does not cite, and we have not found, any case holding that a probation condition can ever qualify as a prior restraint on speech. "In the context of a pending judicial proceeding," as respondent says is the case here, a "prior restraint" ordinarily refers to a court order (or statute) that limits the press's freedom to publish information about the proceeding. See, *e.g.*, *id.* at 250-51, 265-66; *Oklahoma Publishing Co. v. District Court*, 430 U.S. 308, 308-09 (1977); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 541 (1976). The doctrine also applies to statutory schemes that delegate an impermissibly broad discretion to administrative officials to censor publications in advance of a judicial finding that they are not constitutionally protected. See, *e.g.*, *Freedman v. Maryland*, 380 U.S. 51, 52-60 (1965); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 59-64, 70 (1963) (collecting cases).

¶ 57　　Respondent does not even try to explain how the animating concerns of the prior-restraint doctrine, as it applies in these contexts, are present when the juvenile court sets the conditions on which it will permit a delinquent minor to serve a term of probation in lieu of a term in juvenile detention. Nor does he cite any authority holding that any probation condition—juvenile or adult, speech-related or otherwise—ever bears the "heavy

- 11 -

presumption" of unconstitutionality that attaches to a prior restraint in the proper sense of the term. See, *e.g.*, *Sullivan*, 372 U.S. at 70; *In re A Minor*, 127 Ill. 2d at 265.

¶ 58     We will not afford that presumption here. Probationers are not publishers; their speech cannot blithely be equated to the constitutional role of a free press in a democratic society. Of course, probationers do not lose their first-amendment rights entirely upon conviction or adjudication, but they *can* be censored more liberally than, say, a newspaper protecting the public's interest in open and transparent judicial proceedings, provided that the censorship reasonably relates to the rehabilitative goals of the probation.

¶ 59     In his prior-restraint argument, respondent also seems to suggest that *any* social-media restriction, regardless of its scope, would be presumptively invalid because the juvenile court's rehabilitative goals could be reached by other means that do not restrict speech, such as requiring respondent to stay in school, keep a job (both of which the juvenile court required), and attend youth-outreach programs. We will not tie the juvenile court's hands to this degree. Social-media restrictions are not, in general, invalid, or even presumptively invalid. Among other reasons, they are indispensible, in today's world, to the goal of rehabilitating a minor. There can be no dispute that social media is a ubiquitous method of communication and interaction among adolescents like respondent. Thus, "[i]f the juvenile court has any hope of steering [an adolescent] toward a new direction and productive life," given the central importance social media has assumed, "it would be absurd to target only real-world behavior and ignore online activity." *R.H.*, 2017 IL App (1st) 171332, ¶ 26. Subject to the attenuated constitutional standards we outlined above, the juvenile court may continue to impose properly tailored restrictions on juvenile probationers' use of social media.

¶ 60     To this end, respondent argues that the social-media restriction was not narrowly tailored toward the goal of his rehabilitation. Respondent says, for example, that it does not permit him to appear in photos with gang members, even if the photos are "unrelated to gang activity." And it does not specify whether he must *know* that the people who appear in a photograph with him are gang members. These objections fail for the same reason as respondent's previous arguments: they target the juvenile court's initial order and are not responsive to the court's efforts to narrow that order in light of *Omar F.*

¶ 61     Indeed, all respondent says about the revised order is that the addition of the phrase "illegal" changes nothing. Not so. An order that prohibits respondent from displaying illegal gang activity on his social media does *not* thereby prohibit him from posting a photo of himself with a relative, classmate, coworker, or anyone else who happens to be in a gang—as long as the photo does not depict any illegal gang activity. And that is true whether or not respondent knows that someone else in the photo is a gang member. What matters is what is happening in the photo, not who else appears in it, or how much respondent knows about that person.

¶ 62     Even if *some* social-media restrictions were justified by the juvenile court's admittedly compelling interest in keeping respondent away from street gangs and their negative influence, respondent says that this interest would only license the juvenile court to restrict his *future* posts, not to require him to remove any *past* posts that run afoul of the order. We agree that the revised condition does require respondent to remove any past posts that display illegal gang, gun, or drug activity. But we do not agree that this requirement is unreasonable. As the State rightly points out, respondent's continued public association with illegal activity—online or otherwise—poses a clear threat to his prospects for rehabilitation and a successful, productive life. Among other things, a lingering "criminal, digital footprint" may jeopardize his stated

ambitions to attend college and pursue a corporate position with his current employer in the restaurant industry. The juvenile court was acting reasonably, and in respondent's best interests, when it required him to clear his social media of any posts that could stand in the way of the positive ambitions that the court was trying to nurture.

¶ 63 Respondent also objects that the social-media order is a "blanket restraint" or total ban on any social-media posts that make "reference" to, or are in any way "related to gangs, guns, [or] drugs." As a result, it restricts his core political speech and his right to engage in discussion of various pressing social issues. For instance, he could not advocate against joining a gang, lament the gun violence that plagues many Chicago neighborhoods, or take part in constructive debates over the legalization of drugs or the opioid crisis—at least not on social media. Respondent thus contends that the social-media order is not narrowly tailored and is unconstitutionally overbroad.

¶ 64 Respondent's argument misconstrues the scope of the revised social-media restriction. It does not, as he claims, ban all posts that are in any way "related to gangs, guns, [or] drugs." It bans posts that *display* any illegal gang, gun, or drug activity. The obvious intent of this order, as the judge's explanations in open court made clear, was to prohibit respondent from posting any images or depictions (whether still photos or videos) of the prohibited activities. It does not prevent him from discussing these topics.

¶ 65 And even if the word "display," adopted to the modern world of Facebook and other social media, could be interpreted to mean anything posted on that site—including nothing but the written word, without images—we would still find the order constitutional. Given the juvenile court's concerns with respondent, it does not strike us as unreasonable in the least to want to keep respondent as far away from these topics as possible. He is not an ordinary citizen. He is a delinquent minor who got a pass on juvenile detention in exchange for probation with restrictions. And he either is, or may well be on the brink of becoming, ensnared in gang and gun violence. This minimal curtailment of his first-amendment rights is reasonably related to his rehabilitative needs and well within the constitutional limits of the juvenile court's authority.

¶ 66 In sum, respondent has not identified any way in which the juvenile court's revised social-media condition places an unreasonable burden on his first-amendment rights.

¶ 67                                    III. CONCLUSION

¶ 68 For the foregoing reasons, we affirm respondent's conditions of probation.

¶ 69 Affirmed.

¶ 70 JUSTICE GORDON specially concurring:

¶ 71 I concur in the judgment only. Like the majority, I would affirm the trial court's probation conditions ordering (1) that the juvenile "shall refrain from all illegal gang, guns, [and] drug activity," and (2) that "none shall be displayed on his social media."

¶ 72 However, the majority goes further and attempts to distinguish "activity" from "contact" and, in dicta, generates random hypotheticals not found on our facts. *Supra* ¶ 32 ("Suppose, for example, ***.").

¶ 73     I also cannot agree with the majority's conclusion that, if a trial court imposed a no-contact condition pursuant to the statute, then "[t]he statutory provision, which *** gave the juvenile court the option to impose this condition, would fall out of play at that point." *Supra* ¶ 46.

¶ 74     If a statute authorizes a condition, and the trial court acts pursuant to that statute and imposes that condition, word for word, as the statute provided, then we cannot find an abuse of discretion, unless the particular facts of the case did not warrant the imposition of that particular condition. But if the statute authorizes a no-contact-with-gangs condition, and the facts show gang activity, how can we then find that the trial court acted as no reasonable person would—unless we find the statute itself unconstitutional? *People v. Kladis*, 2011 IL 110920, ¶ 42 ("an abuse of discretion exists only where the decision of the trial court is fanciful, arbitrary, or unreasonable to the degree that no reasonable person would take the view adopted by the trial court").

¶ 75     A statute does not simply evaporate, after a trial court acts pursuant to it. It is just the opposite. When a trial court acts pursuant to a statute, a reviewing court should look to the statute first.

¶ 76     However, I do agree with the majority's finding that subsection 2(s) of the juvenile probation statute, which authorizes a trial court to impose a no-contact-with-gangs condition, is "not the proper subject of a vagueness challenge." *Supra* ¶ 47.

¶ 77     For the foregoing reasons, I concur with the judgment only.