NOTICE

Decision filed 04/07/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250473-U

NO. 5-25-0473

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| MARK B. SKERTICH, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 25-OP-611 |
| | ) | |
| JEFFREY LUFFMAN, | ) | Honorable |
| | ) | John P. Hackett, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE McHANEY delivered the judgment of the court.
Justices Boie and Clarke concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The judgment of the circuit court of Madison County that granted the petitioner and two other protected parties a plenary stalking no contact order against the respondent was not against the manifest weight of the evidence and was not otherwise unlawful. Therefore, it is affirmed.

¶ 2    The respondent, Jeffrey Luffman (Respondent), appeals the judgment of the circuit court of Madison County that granted a plenary stalking no contact order against him. For the reasons that follow, we affirm.

¶ 3                                I. BACKGROUND

¶ 4    On May 1, 2025, the petitioner, Mark B. Skertich (Petitioner), filed a verified petition for stalking no contact order (petition), against the Respondent on behalf of Petitioner and two other protected parties: Laura Bauer and Brad Hyre. The petition was completed on a pre-printed form

1

that was captioned for the circuit court of Madison County and that stated its use was "required after January 1, 2010." In an attachment to the petition, Petitioner alleged that Respondent had "engaged in escalating and repeated harassing communication and videos towards" Petitioner, Bauer, and Hyre, all of whom were employees of Collinsville CUSD No. 10 (school district), with Petitioner serving as Superintendent, Bauer serving as Principal, and Hyre serving as Assistant Superintendent. In this disposition, we will refer to Petitioner, Bauer, and Hyre collectively as "the protected parties." The attachment alleged that Respondent's behavior "caus[ed] extreme concern for [the] safety" of the protected parties and caused "emotional distress." The attachment alleged that on December 16, 2024, Respondent was barred from school district property "for aggressive, intimidating and harassing behavior towards" the protected parties. The attachment specified "aggressive and harassing language" found in "at least 75 emails" sent by Respondent to the protected parties, and detailed the language allegedly used by Respondent in a phone call with Bauer.

¶ 5    The attachment alleged Respondent had "sent repeated harassing and threatening emails totaling 1465 email exchanges on 262 threads to" the protected parties. The attachment further alleged Respondent had (1) sent "repeated emails to multiple federal and state agencies filing complaints with unsupported and outlandish allegations;" (2) sent multiple "emails with harassing allegations" to school district legal counsel, "smearing the name[s]" of the protected parties "and causing significant distress;" and (3) sent copies of the emails to media outlets, elected officials, and others. The attachment contained dated examples of such emails, with direct quotes from the emails. The attachment alleged Respondent had received two citations from Collinsville police, one "for online harassment through electronic communications," and one for trespassing on school district property after Respondent was barred from being present on that property. The attachment

2

alleged Respondent posted "multiple videos" on YouTube and Instagram "asserting the same harassing allegations" and using "threatening language." The attachment alleged specific dates and examples of these videos, and provided the account names used by Respondent on YouTube and Instagram. The attachment alleged that the language in the videos demonstrated Respondent was "not contacting [the protected parties] in good faith as a parent or community member," but was instead "clearly sending communications to harass them." The attachment further alleged Respondent recorded a Collinsville police officer in violation of the Illinois Eavesdropping Act, and that school district staff had "spent approximately 4-6 hours a day managing emails from" Respondent "and working to respond to his [Freedom of Information Act (FOIA)] requests," which was a "significant drain on resources *** and *** an abuse of public information requests." The attachment alleged that in multiple videos Respondent posted to Instagram, Respondent stated he was "hoping to make [school district] staff emails 'nuclear' and blow up email inboxes with emails and FOIA requests."

¶ 6    The attachment alleged Respondent's statements and other "threatening and aggressive behavior" caused "significant safety concerns for" the protected parties. The attachment further alleged that Respondent's "escalating conduct, including physically coming to school property in violation of the bar notice," constituted "continued and escalating harassment." The attachment requested that, among other things, Respondent "be prohibited from submitting [FOIA] requests to" the school district "based on the above incidents," because Respondent had "been submitting repeated FOIA requests to harass school employees." The attachment further requested Respondent be prohibited from contacting the protected parties "via phone, email or other electronic communication," and from contacting school district staff and legal counsel "in harassing and repeated manner." The petition also requested relief in its remedies section. The

3

penultimate page of the petition included a pre-printed verification section which asked for the signature only of Petitioner, and which, when filed, included Petitioner's signature. Immediately below this section on the pre-printed form was a space for the contact information of "Petitioner's Attorney or Petitioner (if not represented by an attorney)." The contact information for Petitioner's attorney was typed into this space when the petition was filed.

¶ 7      Also on May 1, 2025, the circuit court issued an emergency stalking no contact order, which by its own terms was to expire at 5 p.m. on May 22, 2025, and which stated that a hearing on the matter would be held at 9 a.m. on May 22, 2025. The order listed the names of all three protected parties, and stated that the circuit court found "that good cause exists for granting the remedy regardless of prior service of process or notice upon the Respondent, because the harm which that remedy is intended to prevent would be likely to occur if Respondent were given any prior notice or greater notice than was given, of Petitioner's efforts to obtain judicial relief." The circuit court also found that venue was proper, and that "[u]pon examination of the Verified Petition, Petitioner under oath, and other evidence, Petitioner is a victim of two or more acts of following, monitoring, observing, surveilling, threatening, communicating or interfering or damaging property or pets by Respondent." The circuit court's emergency order (1) prohibited Respondent "from threatening to commit or committing stalking personally or through third party;" (2) stated that Respondent could not contact the protected parties "in any way, directly, indirectly or through third parties including but not limited to, phone, written notes, mail, email, or fax;" and (3) required Respondent "to stay at least 100 feet away from" the protected parties "residence, school daycare, employment and any other specified place," including all school district property and all school district events "wherever located."

¶ 8    On May 5, 2025, a proof of service for protective orders form was filed with the circuit court which showed Respondent was served with the circuit court's emergency order on May 2, 2025. On May 6, 2025, two short form notifications were filed with the circuit court which showed Respondent was served on May 1, 2025, with notice that a protective order had been entered against him, and with additional notice of the May 22, 2025, hearing.

¶ 9    On May 22, 2025, the circuit court entered a plenary stalking no contact order (order) that stated it was issued on March 22, 2025, and was to expire by its own terms on March 21, 2027[1]. The order listed the names of all three protected parties, and found Respondent had been properly served with process and with notice of the hearing and was "in default." The order stated that venue was proper, and that "[u]pon examination of the Verified Petition, Petitioner under oath, and other evidence, Petitioner is a victim of two or more acts of following, monitoring, observing, surveilling, threatening, communicating or interfering or damaging property or pets by Respondent." The order contained the same prohibitions and conditions on Respondent as the emergency stalking no contact order, and added the following injunctive relief: Respondent was "prohibited from contacting [the protected parties] on work or personal phones, email, or other communication platforms," and was "prohibited from naming [the protected parties] in social media and emails to third parties." The order included, as an attachment, an additional circuit court order that required Respondent not to submit FOIA requests to the school district that had "no relation to" Respondent's child, and that noted that because Respondent failed to appear, Respondent had presented "no evidence or testimony," and "no argument," that was contrary to the circuit court's order. The order stated that Petitioner had presented evidence of Respondent's behavior that the circuit court "deem[ed] to be frivolous and harassing correspondence guised as

_____

[1]As explained below, the dates were subsequently corrected by the circuit court.

FOIA requests." The order added that the circuit court would not "construe the FOIA statute as an avenue for one to lodge complaints, harass or intimidate the recipient simply because the correspondence takes the form of a FOIA request." The order added, however, that the order could not be construed to limit FOIA "requests specific to Respondent's child."

¶ 10    On May 28, 2025, the circuit court entered an order in which it corrected a scrivener's error in the order regarding dates, thereby correcting the order to begin on May 22, 2025, and to expire on May 21, 2027. Also on May 28, 2025, a proof of service of summons for protective orders was filed which showed Respondent was served with the order on May 27, 2025. On June 6, 2025, Respondent filed a *pro se* notice of appeal in which he asked this court to "[r]everse and vacate the [order]." The notice of appeal was accompanied by numerous documents labeled as exhibits.

¶ 11                                II. ANALYSIS

¶ 12    We begin our analysis by setting forth some of the general legal principles relevant to our review of the circuit court's judgment. Pursuant to the Stalking No Contact Order Act (Act), a victim of stalking may seek a civil remedy requiring the stalker to stay away from the victim. 740 ILCS 21/5 (West 2024). The Act defines stalking as "engaging in a course of conduct directed at a specific person," when the respondent "knows or should know that this course of conduct would cause a reasonable person to fear for his or her safety, the safety of a workplace, school, or place of worship, or the safety of a third person or suffer emotional distress." 740 ILCS 21/10 (West 2024). A course of conduct means two or more acts "including but not limited to acts in which a respondent directly, indirectly, or through third parties, by any action, method, device, or means follows, monitors, observes, surveils, or threatens a person, workplace, school, or place of worship." *Id*.

¶ 13 The stalker's conduct must be nonconsensual, but the victim need not contact the stalker to inform the stalker that the contact is unwanted. *Piester v. Escobar*, 2015 IL App (3d) 140457, ¶ 12. The Act focuses on whether the stalker's behavior would cause a reasonable person to be fearful for his safety or to suffer emotional distress. *Id.*; *McNally v. Bredemann*, 2015 IL App (1st) 134048, ¶ 14. A reasonable person is "a person in the petitioner's circumstances with the petitioner's knowledge of the respondent and the respondent's prior acts," while emotional distress is defined as "significant mental suffering, anxiety or alarm." 740 ILCS 21/10 (West 2024).

¶ 14 A petitioner seeking a stalking no contact order is required to prove stalking by a preponderance of the evidence. *Piester*, 2015 IL App (3d) 140457, ¶ 12; 740 ILCS 21/30(a) (West 2024). In the absence of a transcript of the circuit court's plenary hearing, or a bystander's report, this court presumes the circuit court's determination had a factual basis and was in conformance with the law. *Piester*, 2015 IL App (3d) 140457, ¶ 13. Doing so is consistent with the longstanding rule that the "appellant has the burden to present a sufficiently complete record of the proceedings" in the circuit court to support the appellant's claims of error, and that accordingly, "[a]ny doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-392 (1984).

¶ 15 This court will not reverse a circuit court's decision to issue a stalking no contact order unless it is against the manifest weight of the evidence. *Piester*, 2015 IL App (3d) 140457, ¶ 12. A ruling is against the manifest weight of the evidence if it is clearly apparent that the opposite conclusion should have been reached or the ruling is unreasonable, arbitrary, or not based upon the evidence presented. *McNally*, 2015 IL App (1st) 134048, ¶ 12. In addition, when reviewing the circuit court's judgment, this court will not disturb the circuit court's determinations regarding

7

witness credibility, as such questions are for the circuit court to resolve as the trier of fact. *Id.* at ¶ 14.

¶ 16    In the "Issues Presented for Review" section of Respondent's opening brief, Respondent lists six issues he wishes this court to review, which we shall address in turn. Respondent first asks "[w]hether the trial court's allowance of attorneys to act without filing appearances *** rendered the proceedings void for lack of authorized representation." We begin our consideration of this issue by noting that even if we were to assume, *arguendo*, that Petitioner's attorney did not file a proper entry of appearance in this case, as Respondent claims, Respondent does not cite any cases in his briefs on appeal in which a reviewing court has held that a judgment of the circuit court was void merely because an attorney participating in the case failed to file a proper entry of appearance. This court is aware of no such case either. To the contrary, it is axiomatic that "only the most fundamental defects, i.e., a lack of personal jurisdiction or lack of subject matter jurisdiction warrant declaring a judgment void." *Herrera v. Herrera*, 2021 IL App (1st) 200850, ¶ 37. Accordingly, "[o]nce a court has acquired jurisdiction, an order will not be rendered void merely because of an error or impropriety in the issuing court's determination of the law." *Id*. In this case, Respondent has not alleged that the circuit court lacked personal jurisdiction or subject matter jurisdiction. Indeed, any such argument would be without merit under the facts of this case. Therefore, the defendant has not demonstrated that the alleged "allowance of attorneys to act without filing appearances *** rendered the proceedings void," and as a result, his first argument fails.

¶ 17    We note as well that although in his opening brief Respondent posits hypothetical ways in which he believes a party might be harmed if counsel representing an opposing party did not file a proper entry of appearance, Respondent does not indicate any way in which he was actually

8

harmed in the circuit court by the alleged failure of Petitioner's attorney to file a proper entry of appearance in that court. As described above, the record demonstrates that Respondent was properly served with process and was given proper notice of the May 22, 2025, plenary hearing. See 740 ILCS 21/60 (West 2024). Respondent has not alleged that he wished to serve pleadings on Petitioner's attorney but was unable to do so, or that his alleged lack of knowledge as to who was representing Petitioner hindered Respondent's defense of this case in any way.

¶ 18    "The existence of an actual controversy is an essential requisite to appellate jurisdiction, and courts of review will generally not decide abstract, hypothetical, or moot questions." *In re Marriage of Nienhouse*, 355 Ill. App. 3d 146, 149 (2004). Because Respondent has not alleged that he was harmed, there is no actual controversy for this court to review.

¶ 19    Elsewhere in the argument section of his opening brief on appeal, but not explicitly related to any of the issues listed in his "Issues Presented for Review" section, Respondent contends the order is void because Bauer and Hyre did not verify the petition. First, this voidness argument fails for the same reason his previous voidness argument failed. See *Herrera v. Herrera*, 2021 IL App (1st) 200850, ¶ 37 ("only the most fundamental defects, i.e., a lack of personal jurisdiction or lack of subject matter jurisdiction warrant declaring a judgment void"). Second, there is no requirement in the Act that anyone other than the petitioner verify the petition. 740 ILCS 21/25(a) (West 2024). Indeed, there is no place on the pre-printed form that is required for use in Madison County for anyone other than the petitioner to provide a verification signature, even if a person other than the petitioner desired to do so. Third, as Petitioner points out on appeal, sections 10 and 15 of the Act allow the agent of a school district to act on behalf of the school district's employees. 740 ILCS 21/10 (West 2024) ( " 'Petitioner' means any named petitioner for the stalking no contact order or any named victim of stalking on whose behalf the petition is brought," and includes "an authorized

agent of a school"); 740 ILCS 21/15 (West 2024) ("petition for a stalking no contact order may be filed *** by an authorized agent of a school"). In this case, Petitioner, in his capacity as Superintendent, was an authorized agent of the school district and acted on behalf of Bauer and Hyre, who were school district employees. Because Petitioner properly verified the petition, on behalf of himself and the other protected parties, there was no impropriety, and Respondent's argument fails.

¶ 20     Respondent also contends in his opening brief that no transcript or audio recording exists of either the May 1, 2025, emergency hearing, or the May 22, 2025, plenary hearing, which he asserts impedes his ability to appeal the order. He claims the absence of transcripts or recordings "violates" Illinois Supreme Court Rule 46 (eff. Oct. 1, 2024), but he does not cite any portion of Rule 46 that requires transcripts or recordings, and does not cite any case that supports his position that a violation of the rule occurred. This court is aware of no such case either. In fact, nothing in the plain language of Rule 46 *requires* that every circuit court proceeding be recorded, and thus Rule 46 does not support Respondent's argument. See Illinois Supreme Court Rule 46 (eff. Oct. 1, 2024). Accordingly, Respondent's argument fails.

¶ 21     In addition, at the outset of Respondent's reply brief, Respondent states that "the absence of a transcript does not limit review" in this case because the violations he alleges "appear on the face of the written orders and formal filings." This statement directly contradicts the previous assertion by Respondent that his ability to appeal the order has been impeded by the absence of transcripts or audio recordings. As explained above, "[t]he existence of an actual controversy is an essential requisite to appellate jurisdiction, and courts of review will generally not decide abstract, hypothetical, or moot questions." *In re Marriage of Nienhouse*, 355 Ill. App. 3d 146, 149 (2004). Because Respondent no longer alleges he was harmed by the absence of transcripts or audio

recordings, there is no actual controversy for this court to review. In the absence of alleged actual harm to Respondent in the circuit court, we decline to address his abstract, hypothetical, and unsupported assertions about Rule 46. For this reason too, Respondent's argument is without merit.

¶ 22 Respondent further contends the order is void because it contains restrictions on Respondent's access to firearms. This is not accurate. Although there is a box on the order stating that "Respondent be prohibited from possessing a Firearms Owners Identification Card, or possessing or buying firearms," that box is not checked on the order, and therefore the order does not restrict Respondent's access to firearms in the manner he suggests. He further argues that the circuit court judge could not enter the order in this case because Respondent had moved to recuse the judge in a separate case pending in Madison County. However, Respondent cites no case that supports the idea that the request to recuse a judge in one case prevents that judge from entering an order in an entirely separate and unrelated case where no request for recusal has been made. This court is aware of no such case either. Accordingly, Respondent's argument fails.

¶ 23 Respondent next asks "[w]hether the absence of proper appearances, notice, and service deprived [Respondent] of due process." However, as described above, the record demonstrates that Respondent was properly served with process and was given proper notice of the May 22, 2025, plenary hearing. See 740 ILCS 21/60 (West 2024). Any argument to the contrary is not supported by the facts and is without merit. Likewise, we have already explained why Respondent's argument about the alleged "absence of proper appearances" is without merit. Moreover, to the extent Respondent argues he did not attend the plenary hearing because he believed the case had been "terminated," it was Respondent's responsibility to confirm the status of the case, and his failure to do so does not negate the proper service of process and notice of the hearing Respondent received. As Petitioner points out, this is particularly true where, as here, there

11

is no circuit court order in the record that "terminated" the proceedings, and one of the docket entries that Respondent claims shows the case was "terminated" in fact states clearly and unequivocally that the case was "[a]ctive." Because the purported factual basis of Respondent's argument is contradicted by the record, and because it was Respondent's responsibility to confirm the status of the case after he received proper service of process and notice of the hearing, Respondent's argument fails.

¶ 24    Respondent next asks "[w]hether the denial of appointed counsel, despite overlapping civil and criminal exposure, violated [Respondent's] rights." There is no indication in the record on appeal, or in Respondent's briefs on appeal, that Respondent requested the appointment of counsel in the circuit court. Accordingly, there is nothing for this court to review with regard to such an issue. To the extent Respondent is raising this issue in his briefs on appeal in an attempt to relitigate this court's previous ruling that Respondent is not entitled to appointed counsel to represent him in this appeal, Respondent already raised this issue in a motion to this court, which was denied. This court stands by that denial for the reasons previously stated.

¶ 25    Respondent next asks "[w]hether sanctions and fee awards based on 'AI suspicion' or isolated citation errors *** imposed without notice or hearing, violated" his rights. As with his previous issue, there is no indication in the record on appeal, or in Respondent's briefs on appeal, that Respondent was sanctioned in the circuit court. Accordingly, there is nothing for this court to review with regard to such an issue. To the extent Respondent is raising this issue in his briefs on appeal in an attempt to relitigate this court's previous ruling that imposed sanctions on Respondent on appeal, Respondent already raised this issue in a motion to this court, which was denied. This court stands by that denial for the reasons previously stated.

¶ 26    Respondent next asks "[w]hether the *** [order] and its enforcement by criminal citation unlawfully chilled Respondent's FOIA activity, restricted social-media speech about public officials, and interfered with fundamental parental rights." Respondent contends he has "pending FOIA requests" related to a federal civil rights lawsuit he has filed against the school district, and that he cannot conduct adequate discovery in that case without using FOIA. He further contends the circuit court may not enter an order that limits FOIA activity or punishes "online speech about school officials" because such limits "are unconstitutional prior restraints." Similarly, Respondent argues that "speech criticizing public officials or government conduct" is protected free speech. Respondent further contends "[t]he order barred communication with educators and participation in [Respondent's] daughter's education, violating the fundamental liberty interest in child rearing."

¶ 27    First, with regard to Respondent's claim that he has "pending FOIA requests" related to a federal civil rights lawsuit he has filed against the school district, and that he cannot conduct adequate discovery in that case without making FOIA requests to the school district, we agree with Petitioner that if Respondent cannot use FOIA for discovery, he can obtain the discovery he needs by utilizing applicable federal court discovery rules. Moreover, as described above, the order expressly states that it cannot be construed to limit FOIA "requests specific to Respondent's child." Thus, any FOIA requests related to Respondent's federal civil rights lawsuit against the school district that fall into the category of "requests specific to Respondent's child" are still permissible. Accordingly, we are not persuaded that the FOIA restriction in the order prevents Respondent from conducting adequate discovery. We further agree with Petitioner that the order does not in any way restrict Respondent's ability to file and pursue valid federal claims, and does not otherwise interfere with his federal lawsuit.

13

¶ 28    Second, with regard to Respondent's claim that the order cannot limit Respondent's "online speech about school officials" because "speech criticizing public officials or government conduct" is protected free speech and limits on it amount to "unconstitutional prior restraints," Petitioner is correct that this court has upheld a circuit court ruling that online postings that are part of a course of unlawful conduct of stalking under the Act are not protected free speech, and that in such situations, prohibitions on future online postings are permissible. In *Piester v. Escobar*, 2015 IL App (3d) 140457, ¶ 6, the plenary stalking no contact order prohibited the respondent from, *inter alia*, posting anything on social media about the petitioner. In the appeal that followed, one of the claims of the respondent was that the order violated her free speech rights. *Id.* ¶ 9. When evaluating the respondent's free speech challenge, this court first noted that "[a] party's exercise of free speech is expressly excluded from the [Act] and may provide a defense." *Id.* ¶¶ 17-18. We added, however, that the Act "prohibits speech that includes threats of violence or intimidation, which are not constitutionally protected," and that "[w]ords concerning surveilling, interfering, or harassing a person are not entitled to protection as free speech." *Id.* ¶ 18. We concluded that the "social media postings and other online comments" at issue in that case "were part of a course of conduct of stalking" because they included "threatening and harassing comments about [the petitioner]." *Id.* ¶ 19. Accordingly, the social media postings and other online comments were "not protected under the first amendment," and the circuit court's order—including its prohibition against the respondent posting anything on social media about the petitioner—was upheld. *Id.* ¶¶ 19-20.

¶ 29    Likewise, in *McNally v. Bredemann*, this court noted that although the Act is civil in nature, the Act itself recognizes that " '[s]talking is a serious crime' " for which victims need an adequate remedy. 2015 IL App (1st) 134048, ¶ 10 (quoting 740 ILCS 21/5 (West 2012)). We noted that [w]hile stalking does contain an element of speech, that speech does not fall within the protections

14

of the first amendment" if it is comprised of "words surrounding surveilling, interfering, or harassing a person to intimidate," because such words "are not constitutionally protected." *Id.* ¶ 17. We held that the online postings in question in *McNally* "were a transparent part of [the] stalking conduct," and we reiterated a longstanding holding of the Illinois Supreme Court that " '[w]here speech is an integral part of unlawful conduct, it has no constitutional protection.' " *Id.* (quoting *People v. Bailey*, 167 Ill. 2d 210, 227 (1995)); see *e.g.*, *Wright v. County of DuPage*, 316 Ill. App. 3d 28, 43 (2000) (because activities occurring at massage spas did not constitute expression protected under the first amendment, court did not need to consider spas' claim that ordinance governing spas was unconstitutional as overly restrictive and a prior restraint on freedom of speech); *Same Condition, LLC v. Codal, Inc..* 2021 IL App (1st) 201187, ¶ 42 (the post-adjudication remedy of prior restraint of unprotected speech has been approved by multiple courts where the purpose of the remedy was to prevent additional unlawful conduct by the restrained party).

¶ 30    In this case, as described in detail above, the allegations in the petition and its attachment, and the findings in the order, were comprised in part of social media postings that the circuit court determined were part of Respondent's course of unlawful conduct of stalking. Accordingly, the section of the order that prohibited Respondent "from naming [the protected parties] in social media" was consistent with this court's ruling in *Piester*, as well as with the general principles about unprotected speech found in *McNally*, *Bailey*, *Wright*, and *Codal*.

¶ 31    Nevertheless, it is certainly true, as Respondent contends, that as a general rule content-based prior restraints on *protected* speech "are highly disfavored, subject to strict scrutiny, and must be narrowly tailored to serve compelling state interests." *In re Jawan S.*, 2018 IL App (1st) 172955, ¶ 52. A content-based restriction is one that regulates "speech based on 'the topic

15

discussed or the idea or message expressed.' " *Id*. (quoting *Reed v. Town of Gilbert, Arizona*, 576 U.S. 155, 163 (2015)). In this case, even if we were to assume, *arguendo*, that the speech in question is protected speech, there is no content-based restriction in the order, because the order does not prohibit Respondent from posting on social media about any topic Respondent chooses, and does not prohibit Respondent from expressing any idea or message Respondent chooses. To the contrary, the order simply prohibits Respondent "from naming [the protected parties] in social media[2]."

¶ 32    Moreover, even if we were to further assume, again *arguendo*, that the order does contain a content-based restriction on protected speech, we would conclude under a strict scrutiny analysis that the order is narrowly tailored, and uses the least restrictive means possible, with regard to its curtailment of Respondent's social media speech, prohibiting only the naming of the protected parties in social media, and that it serves a compelling state interest, which is the prevention of additional violations of the Act by the Respondent against the protected parties via Respondent's social media posts. See, *e.g.*, *In re R.H.*, 2017 IL App (1st) 171332, ¶ 19 (state had compelling interest in restricting minor probationer's social media activity that was closely related to minor's crimes, as a means of preventing minor from engaging in additional criminal acts).

¶ 33    Third, with regard to the question of whether an order under the Act may restrict FOIA activity, we agree with Petitioner that the Illinois Supreme Court's holding in *In re Appointment of Special Prosecutor*, 2019 IL 122949, is instructive. In that case, the City of Chicago (City) and the office of the special prosecutor (OSP) denied FOIA requests from the Better Government Association (BGA) which asked for access to sealed grand jury documents. 2019 IL 122949, ¶ 1.

---

[2]Respondent does not contend on appeal that he does not understand the restriction or that the restriction is overly vague.

16

The circuit court agreed with OSP that the release of the requested grand jury documents was prohibited by section 112-6 of the Code of Criminal Procedure of 1963 (725 ILCS 5/112-6 (West 2014)), which meant the documents were exempt from disclosure under section 7(1)(a) of the Freedom of Information Act (5 ILCS 140/7(1)(a) (West 2012)). *Id.* ¶ 14. In addition, the City contended the release of the protected documents was prohibited by earlier protective orders issued by the criminal court with regard to the documents, which likewise meant the documents were exempt from disclosure under section 7(1)(a). *Id.* ¶ 15. However, the circuit court disagreed, and declined to rule that a protective order, alone, could create a FOIA exemption. *Id.* ¶ 15.

¶ 34 On appeal, the Illinois Supreme Court held that to allow a FOIA request to circumvent the restrictions found in section 112-6 of the Code of Criminal Procedure of 1963 on the release of grand jury documents "would effectively nullify the grand jury secrecy protections provided by section 112-6." *Id.* ¶¶ 33, 39-43. With regard to the City's argument that the release of the protected documents was prohibited by the protective orders, the Illinois Supreme Court agreed, holding "that a lawful court order takes precedence over the disclosure requirements of FOIA." ¶ 66. The court stated that the rule created by its decision meant "that a FOIA lawsuit may not be used to collaterally attack" a previous protective order "prohibiting disclosure of records." ¶ 67.

¶ 35 Thus, *In re Appointment of Special Prosecutor* stands for the proposition that FOIA cannot be used for improper purposes, and that when it is, there are appropriate legal limits that can be placed on FOIA activity. In *In re Appointment of Special Prosecutor*, the improper use of FOIA was BGA's attempt to use FOIA requests to circumvent statutory provisions and protective orders that sealed the documents in question, and to use a FOIA lawsuit to attempt to collaterally attack the protective orders. In this case, which does not involve disclosures in response to FOIA requests, but does involve limiting a person's ability to make a FOIA request in the first place, the improper

17

use of FOIA—which was expressly found by the circuit court and explained in the order—was Respondent's use, as a means of harassment and as part of his course of unlawful conduct of stalking, of "correspondence guised as FOIA requests." We conclude that in accordance with *In re Appointment of Special Prosecutor*, the circuit court had the right to place appropriate legal limits on Respondent's ability to make FOIA requests.

¶ 36    Respondent's harassing use of FOIA was well documented in the materials referenced in the petition and its attachment—including Respondent's statements in multiple videos posted to Instagram that Respondent "hop[ed] to make [school district] staff emails 'nuclear' and blow up email inboxes with emails and FOIA requests"—and the circuit court expressly found that Petitioner presented evidence that supported the court's decision. The circuit court further stated it would not "construe the FOIA statute as an avenue for one to lodge complaints, harass or intimidate the recipient simply because the correspondence takes the form of a FOIA request." Moreover, the circuit court's remedy for Respondent's misuse of FOIA was narrowly tailored to prevent additional harassment by Respondent, and used the least restrictive means necessary to do that. As discussed above, the order expressly stated that it could not be construed to limit FOIA "requests specific to Respondent's child." In addition, the circuit court's remedy for Respondent's misuse of FOIA served the compelling state interest of preventing additional unlawful stalking conduct by Respondent, and was designed to ensure compliance with the order and with the Act. Because the restrictions on Respondent's FOIA activity were necessary, reasonable, served a compelling state interest, and were narrowly tailored to the circumstances of this case in relation to the underlying purposes of the Act, the circuit court did not err in ordering the restrictions.

¶ 37    Fourth, with regard to Respondent's claim that the order violated his "fundamental liberty interest in child rearing" because it "barred communication with educators and participation in

18

[Respondent's] daughter's education," we note that the order does not bar any direct contact or communication between Respondent and his daughter about education or any other matter. Accordingly, Respondent still may directly participate in his daughter's education. For example, he may help her with homework, help her study for exams, and encourage and participate in extracurricular reading and other extracurricular academic activities with her. To the extent the order bars contact between Respondent and the protected parties, that bar is the result of Respondent's stalking behavior and he alone is responsible for it. Respondent cites no case that finds a violation of a parent's "fundamental liberty interest in child rearing" under circumstances similar to those in this case, where a valid order has been entered pursuant to the Act. This court is aware of no such case either. Accordingly, Respondent's argument fails. Fifth, because we have determined that the speech in question is not constitutionally protected, there is no merit to Respondent's claim that the enforcement mechanisms of the Act criminalize protected speech.

¶ 38 Nowhere in his appeal briefs does Respondent contend the judgment of the circuit court of Madison County was against the manifest weight of the evidence. We have reviewed the allegations in the petition and its attachment, as well as the circuit court's thorough and well-reasoned order—which we reiterate expressly stated that at the May 22, 2025, hearing, the protected parties presented evidence in support of their position—and we conclude that it is not clearly apparent that the opposite conclusion to that reached by the circuit court should have been reached. Moreover, the circuit court's rulings are not unreasonable, arbitrary, or not based upon the evidence presented. Accordingly, the decision to issue the order was not against the manifest weight of the evidence (see, *e.g.*, *McNally*, 2015 IL App (1st) 134048, ¶ 12), and we will not reverse it. *Piester*, 2015 IL App (3d) 140457, ¶ 12. In making this finding, we are guided in part by the longstanding principle that a reviewing court should not disturb the circuit court's

determinations regarding witness credibility, as such questions are for the circuit court to resolve as the trier of fact. *McNally*, 2015 IL App (1st) 134048, ¶ 14.

¶ 39 The final issue Respondent raises in this appeal is "[w]hether the cumulative effect of unauthorized representation, denial of counsel, unsupported sanctions, and prior restraints on speech requires vacatur of the orders below and remand for correction of the record." However, because we have found no individual errors in this case, we find no cumulative error. See, *e.g.*, *Snowstar Corporation v. A&A Air Conditioning & Refrigeration Service, Inc.*, 2024 IL App (4th) 230757, ¶ 123 (no cumulative error exists in the absence of individual errors). We are compelled to state as well that to the extent Respondent attempts to raise additional issues for the first time in his reply brief, that is not permissible and this court will not consider any such issues. See Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) (points not argued in opening brief are forfeited and shall not be raised in the reply brief *** or on petition for rehearing).

¶ 40                                  III. CONCLUSION

¶ 41 For the foregoing reasons, we affirm the judgment of the circuit court of Madison County.


¶ 42 Affirmed.